ALICE MUNDEE, PLAINTIFF IN ERROR, VS. FREDERICK K. FREEMAN, DEFENDANT IN ERROR.

1. A tax deed of land sold under the revenue act of 1872 (chapter 1887) for taxes assessed in 1871 under the general revenue law of 1869, (chapter 1713,) is *prima facie* evidence that the assessment was lawfully made and that a warrant was annexed to the copy of the assessment roll de'ivered to the Collector of Revenue.

2. What remained of the assessment roll as delivered to the Collector of Revenue was introduced in evidence. No assessment of the land appeared on, nor was any warrant annexed to, the parts put in evidence. The lids and about one-third of the pages of the roll were missing, its binding cords out, and it was in several disconnected parts. The person who held the office of Collector of Revenue and made the tax sale testified that the roll originally had an outer binding or lid on it and a warrant attached to it; that the warrant was usually placed on the inner first or last lid; that he never collected taxes or sold land without a warrant nor ever sold any land that was not enrolled on the tax book, stating that he testified that there was a warrant because, or " upon the principle " that he never received an assessment roll without one ; *Held*, Insufficient to overcome the effect of the deed as *prima facie* evidence of a legal assessment and warrant.

3. When there is legal evidence of an assessment of land, and the land has been sold for taxes, and the tax deed legally recorded, the provisions of section 20 of the revenue law of 1872, (chapter 1887,) limiting the grounds upon which a former owner or claimant may, after a year from the record of the deed, set aside the deed or recover the land, are valid and operative.

4. Internal Improvement Fund lands cease to be public lands and become liable to taxation as private property upon being entered by a person at the proper office, and evidence of the entry obtained, and if the taxes assessed afterwards are not paid the land may be sold for the collection of the same, although no conveyance or patent for the land may have issued.

5. The execution of a tax deed made by a Clerk of the Circuit Court, was proved by affidavit of one of the subscribing witnesses thereto before the same clerk, and the deed was recorded on.

35

this proof in the records of the Clerk's office ; *Held*, The record
is legal.

6. After a referee has filed in the Clerk's office an order refusing a mo-
tion for a new trial, he has no power to grant a rehearing of such
motion or to permit an amendment of the original motion by ad-
ding a new ground to the same.

Writ of error to the Circuit Court for Marion county.

The plaintiff in error sued the defendant in error, April
20, 1885, in an action of ejectment to recover the west half
of the north-east quarter of section 2, township 15, south
range 23, east, situate in Marion county and containing
about eighty acres.  The defendant pleaded not guilty,
and the cause was referred to Richard McConathy, Esq.,
for trial under the referee statute.  A motion for a new
trial having been made by the plaintiff and granted, there
was a second trial.  The result of the second trial was a
judgment in favor of the defendant, and a refusal of both
a motion made by the plaintiff for a new trial and for a
*rehearing of such motion.*

The plaintiff put in evidence a deed of conveyance of
said land to her from the Trustees of the Internal Improve-
ment Fund of this State, bearing date May 14, 1883, which
deed appears to have been filed in the Clerk's office of
Marion county for record, on September 23, 1884, and is
certified by the Clerk, under date of October 1st of same
year, to have been recorded.

The defendant introduced in evidence a copy of a receipt
of the Treasurer of said Trustees, certified by the Commis-
sioner of Lands and Immigration, which receipt is in the
following words and figures :

" TREASURER'S RECEIPT 6023.

" TREASURER'S OFFICE,
" TALLAHASSEE, Fla., Sept. 15, 1870.

" No. 587.

"Received from Alice Mundee the sum of ninety-four dollars and sixty-five cents for the purchase of the west half of the northeast quarter of section two, township 15, South, Range 23, East, I. I., containing 75.72 acres, at $1.25 per acre.

"S. B. CONOVER,

"Treasurer Board Trustees,

"$94.65.                 "Internal Improvement Fund."

He also put in evidence a deed from W. H. LeCain, County Clerk of Marion county, dated April 1st, 1874, to James Harris, which deed was recorded in the Clerk's office of Marion county, April 27th, 1876, on affidavit of one of the subscribing witnesses made before the clerk who executed the deed.

The other facts are stated in the opinion.

*John G. Reardon* for Plaintiff in Error.

*W. S. Bullock* for Defendant in Error.

MR. JUSTICE RANEY delivered the opinion of the court:

I. If Freeman's mediate grantor, Harris, had a valid tax title, there is no necessity to discuss the question of the title of the former by adverse possession for seven years under a claim of right and color of title; still, we may remark, that we have been forced to a consideration of the validity of the tax title by the serious doubts left in our minds, after careful study, as to Freeman having shown a title by such adverse possession.

The tax sale was made July 1st, 1872, for unpaid taxes assessed in the tax year of 1871. This sale was regulated by the act of February 29, 1872, (Chapter 1887,) entitled "an act for the assessment and collection of revenue in

this State." The assessment, however, was made under the Revenue Act of 1869, (Chapter 1713,) to which the act just mentioned was in effect an amendment, doing away with certain of its provisions and substituting others in their place.

The validity of the tax title is assailed upon the ground that the Collector of Revenue never received any warrant authorizing him to make sales for the collection of taxes, and also upon the ground that the land in question was never assessed or placed on the roll.

The 17th section of the Act of 1872, above referred to, provides a substantial form of a deed of land sold for taxes, and that this deed shall be *prima facie* evidence of the regularity of the proceedings from the valuation of the land by the assessor to the date of the deed *inclusive* and of the title of the purchaser; and the 20th section provides that no suit or proceeding shall be commenced by a former owner or claimant * * * to set aside any deed made in pursuance of any sale of land for taxes, or against the grantee in such deed, his heirs or assigns or legal representatives to recover possession of said lands, unless such suit or proceedings be commenced within one year after the recording of the deed in the county where the lands lie, *except upon the ground* that the said *lands were not subject to taxation*, or that the taxes were paid or tendered together with the expenses chargable thereon before sale. There is a saving clause as to persons under certain disabilities, but the plaintiff has not set up any disability.

The evidence as to the absence of an assessment and want of a warrant is the testimony of two witnesses—Bullock, introduced by the plaintiff, and Atkinson, by the defendant, and what is left of the tax roll of that year. Bullock was a deputy of the Clerk of the Circuit Court of Marion county at the time his deposition was taken in 1885. He

says of this tax roll, which was before him, that it is in the Clerk's custody; that it has no warrant attached to it authorizing the Collector to collect the taxes, and that, (as we understand the witness to mean at this particular stage of his testimony) under the letter M neither the name of, nor any assessment to, the plaintiff appears in it. He further says all of the book does not appear to be present, but that a part of the assessments under letter A seem to be gone; that it has no binding or covering on it; that the pages are not numbered; that he cannot say positively that a part of the book is gone, but it seems to be; that its condition is very bad, the binding cords are out; that he thinks a number of pages might be out of the book, and he be unable to detect it; that four pages are disconnected, the binding is entirely loose, and in four disconnected parts; that all the assessments do not come in alphabetical order; that the warrant to the Collector is usually placed on the last leaf of the book, but that it is hard to tell which is the last leaf of this book; that this warrant is usually placed on the leaf where there is no other entry made; that there is one leaf here on which no entry is made, and "it appears that that was the last leaf in the book." "I have made a careful examination, and listing of assessments appear," he says, "to be alphabetically ar ranged from A to Z, and in regular order." This last statement was made on his being handed the book, and asked to examine the same and to testify on the point covered by his answer. Upon his attention being called to assessasments under the letter M, and being asked whether or not it appears from said book that all the assessments under said letter are there, he replies: "I cannot say they are. They are, with the exceptions of some names in the back of the book which appear to be irregular assessments." When asked if any of the pages under the letter M were missing

he could tell it, he replies that he could not.  The book, he says, is separated in two or more distinct pieces under the head of the letter M.

Manthalon Atkinson testifies that he was Tax Collector for Marion county, Florida, in 1871.  The book here shown him purporting to be the Assessor's book of 1871 is the book, or a part of it, from which he collected taxes for said county; it is not a complete book.  The book had an outer binding or lid on it; knows this, because he never had one ".but that did ;" never received one that did not have a warrant; it contained a warrant either on the first or last part of it ; knows he never collected taxes without a warrant; never sold land as Collector without a warrant; it was usually placed on the inner first lid or the inner last lid of the book ; the book now produced has not the lid on which the warrant was usually fastened ; never sold any land that was not enrolled on the tax book ; if he did it was error ; did not do it ; the book shows that part of it is gone.  On cross-examination, he says he finds no land assessed to Alice Mundee; has examined the book at such places as her name would probably appear.  From an examination of the book the assessments under the letter M seem to be formal, but " I do not know that all the leaves are there ;" is acquainted with the handwriting of James A. Harris in 1870 and 1871 ; the assessments in the back part of said book are in his handwriting; states " that there was a warrant to said book on the principle that he never received one without; but do not recollect as to this one in particular."  Redirect: " Cannot tell whether or not one of the letter M pages is gone ; knows some of it is gone, two-thirds of it here."

The tax roll has been brought here with the transcript, and the condition is such as to entitle it to no weight as evidence of exactly what property was and what was not

upon it, in its original condition. It has no binding, its pages are nearly all separated from each other, and are not numbered. Even if it can be said that its condition is worse than when the witnesses were testifying, it is plain it was not then reliable evidence of what assessments the roll originally contained, or that there were no assessments on the missing pages. The testimony is that one-third of the book is missing. Even though some system appears from the pages before us to have been observed in arranging the assessments alphabetically, it cannot be assumed from this either that the name of the plaintiff was not on any of the missing pages with this land assessed against it, or that it was not assessed as unknown lands, which would seem to have been a proper assessment, as much in the record bearing on the point indicates that the land was "unoccupied" up to a period after Harris purchased it at the tax sale. It is no better evidence, even if as good, that there was no warrant annexed to it.

The validity of the above 17th and 20th sections is affirmed by the decisions of this court in Sams vs. King, 18 Fla., 557; Florida Savings Bank vs. Brittain *et al.*, 20 Fla., 507, and cases cited; see also 22 Fla., 587. The effect of the testimony of the witnesses and of the mutilated tax roll is not sufficient to overcome the *prima facie* evidence of a valid assessment of the land and of the existence of a warrant, which, under the statute, the tax deed constitutes. What we have previously said as to such testimony and tax roll was stated and is to be considered with reference to the effect given by the statute to the tax deed as evidence. There are no irregularities as to assessment or of like character shown by the deed that are not excluded by section 20 as grounds for assailing the deed, if the lands were taxable and the limitation of one year had passed.

The land was taxable at the time it was assessed, and when it was sold. It was entered and paid for September 15th, 1870. It then became the property of Mrs. Mundee, the bare legal title, and nothing more, remaining in the Trustees of the Internal Improvement Fund until the deed should be made. This was made May 14th, 1883. Lands of the United States, purchased by individuals, are held by the courts to be taxable by the States as soon as they are entered, and we see no reason why the same rule should not apply here. These lands, in the hands of the trustees, or as long as they are a part of the public trust to which the State has appropriated them, are exempt from taxation, but as soon as they have become private property they should be held liable to it. As soon as the entry is made the beneficial ownership is in the purchaser, and should be taxed as any other private property. Witherspoon vs. Duncan, 4 Wall., 210 ; R. R. Co. vs. Prescott, 16 Id., 603 ; Carroll vs. State, 3 How., 441.

If the tax deed was legally recorded, the limitation of one year had passed, and the provisions of section 20 had become operative in this case in support of Harris' tax title, and when this action was instituted by the plaintiff in error, they sustain it as against her title. The record of the deed was made upon the affidavit of one of the attesting witnesses. This affidavit was made before the same Clerk of Marion Circuit Court who executed the deed. The Revenue Statute of 1872 imposed upon him the duty of executing this tax deed. It has been held by this court, and other courts, that a grantee in a deed cannot legally take the grantor's acknowledgment of having executed it, and that an acknowledgment so taken is void. Hogans vs. Carruth, 18 Fla., 587, and cases cited. Of course the record of the deed made upon such an acknowledgment

would be illegal. The ground of these decisions is that the interest of the grantee vitiates his action. In Texas, where the trustee named in a deed, took the acknowledgment of the grantor, his act was held to be void on account of his interest growing out of the commission or compensation he would be entitled to for his services as trustee under the deed, Brown vs. Moore, 38 Texas, 645, and in Pennsylvania it was decided that a married woman's acknowledgment of her relinquishment of dower in lands conveyed by her husband, taken by a person who had covenanted to convey this land to a third person, was void, and that she was not barred of her dower. Withers vs. Baird, 7 Watts, 227. This latter decision was also put on the ground of interest; the party taking the relinquishment being interested in having the conveyance made, and thereby keeping his covenant, was held incompetent, by reason of such interest, to do the wife justice or act impartially in taking her relinquishment of dower.

We do not see that the principle of these cases applies here. The fact that the clerk receives a fee for making the deed, cannot disqualify him; his right to the fee is in no way dependent upon whether the deed shall be recorded or not. The fact that he is entitled to a fee for taking the proof of execution, or for recording the deed, can no more invalidate his act than does his right to such compensation affect the validity of proof taken, or the record made by him of a deed executed by another person. Where an officer has, in the performance of his official duties, executed a deed, we see nothing to incapacitate him from administering an oath to one of the subscribing witnesses desiring to make proof of such fact; there is nothing in the circumstances appealing to his interests or calculated to advance them in any way in so far as the deed or property it conveys is concerned, but it would be, in this aspect, an

act more in derogation of his interest, than furtherance of it, if he had any interest in the property. It commits him further, if anything, to the act of parting with the property. He knows whether or not the party offering himself is the real subscribing witness, and there is no chance for him to. be imposed upon ; he is not under the necessity of making any inquiry on this point. Where the conveyance is one made in an official capacity, as here, and he has no private interests involved, we are unable to find ground for holding the act illegal. What part this might play in case there were circumstances indicating fraud, we do not say, but there is nothing fraudulent or illegal, in the act itself. We think the deed was legally admitted to record. Baird vs. Evans, 58 Ga., 350 ; Lynch vs. Livingston, 2 Seldon, 422.

II. On the 9th day of August, 1886, the referee filed in the office of the Clerk of the Circuit Court his finding and judgment in favor of the defendant, and on the 18th day of the same month the plaintiff filed a motion for a new trial, which motion was, by an order made September 10th, and filed in the Clerk's office the next succeeding day, denied. On the 21st day of September the plaintiff moved before the referee for a rehearing of the motion for a new trial, and for leave to amend such motion by adding the ground of newly discovered evidence. This motion was in writing and a copy of it was served on defendant's counsel. The referee refused this motion December 2, 1886, on the ground that " after the expiration of ten days from the date of notice of filing the judgment in the Clerk's office, a motion for a new trial cannot be made."

The decision of the original motion for a new trial gave, on its being filed in the Clerk's office, September 10th, finality to his finding and judgment of August 9th, and

the power of the referee to further consider the cause then ceased. It is provided by the fourth section of the statute that, when a motion for a new trial is refused, the referee shall file all the papers used on such motion, together with the decision in writing, with the Clerk of the Court, and such decision and the judgment shall be entered in the minutes of the court and stand as the judgment of the court, as in other cases. The motion for a new trial was made within ten days after the filing of the original finding and judgment. From the fact that this motion was made in this time, and from the recital in the order of December 2d, we must presume that the notice of such filing required by the third section of the statute was given by the referee. Where it has been given the statute allows only ten days for making a motion for a new trial and no more. It does not provide for a rehearing of a motion after it has been decided and filed with the Clerk, and in the absence of such a provision no such power can be exercised. The application to amend the motion made after it has been decided and filed, and thus insert an entirely new ground in it, is, in effect, a second and independent motion for a new trial, and if we should allow it, we would, by doing so, extend the time allowed by the statute for making motions for new trials from ten to at least forty days. We have no such power. The case of Stewart vs. Matthews, 19 Fla., 752, supports our conclusion upon this point.

The judgment is affirmed.