THE PEOPLE OF THE STATE OF NEW YORK ex rel. DONNER-UNION COKE CORPORATION, Respondent, *v.* WILLIAM J. BURKE and Others, as Assessors of the City of Buffalo, Appellants.

Fourth Department, March 7, 1923.

Taxation — review of assessment — relator purchased from United States government building and equipment erected on his land — title to plant was to remain in United States government until fully paid for by twelve monthly installments to begin December 31, 1921 — plant exempt from taxation for year 1921 under Tax Law, § 4 — total assessment erroneous — duty of court to correct error.

Buildings and equipment erected by the United States government on land belonging to the relator and which were sold to the relator by the government under a contract whereby the relator agreed to buy the plant upon certain terms and to pay therefor in twelve monthly installments beginning December 31, 1921, with a provision that the title was to remain in the United States until the relator should have paid for the plant in full, and that upon default the United States might retake possession and the payments made should be considered as rental, were, as property of the United States, exempt from taxation for the year 1921, under section 4 of the Tax Law.

The referee having found that the plant was exempt from taxation and that the land alone which was assessed for $110,420 was worth $150,000, the total assess-

**558** People ex rel. Donner-Union Coke Corp. *v.* Burke.

Fourth Department, March, 1923. [Vol. 204

ment was erroneous, and it was the duty of the court to determine the extent of the error, which was the difference between the value of the land alone as found by the referee and the total valuation of the land and plant.

Appeal by the defendants, William J. Burke and others, from an order of the Supreme Court, made at the Erie Special Term and entered in the office of the clerk of the county of Erie on the 25th day of April, 1922, confirming the report of a referee in a certiorari proceeding brought to review the assessment of relator's property, made by defendants for taxation for the year 1921.

*William S. Rann, Corporation Counsel* [*Herbert A. Hickman* of counsel], for the appellants.

*Slee, O'Brian & Hellings* [*Dana B. Hellings* and *Frederick C. Slee* of counsel], for the respondent.

Crouch, J.:

The relator on December 1, 1920, was the owner of forty acres of land in Buffalo. Upon that land were certain buildings and fixed equipment hereinafter referred to as the plant, which were occupied and used by relator. The plant had been erected during the war under an agreement between relator and the United States. By the terms thereof the title to the plant vested in the United States. On June 30, 1920, a contract between the same parties was made whereby relator agreed to buy the plant upon certain terms and to pay therefor in twelve annual installments beginning December 31, 1921. Relator was to take over and operate the plant at its own expense and risk, but the title was to remain in the United States until relator should have paid for it in full; and upon default the United States might retake possession and payments made should be considered rental. Relator agreed to maintain the plant in readiness to furnish the quantity and quality of toluol and ammonium sulphate for which the plant was originally designed for fifteen years after December 31, 1920. The said land and the plant were assessed as of December 1, 1920, against relator for the purpose of taxation for the year 1921, as follows:

| | | |
|---|---|---:|
| Land............................................... | | $110,420 |
| Improvements: | | |
| (a) Buildings........................ | $644,715 | |
| (b) Equipment.................... | 2,708,625 | |
| | | 3,353,340 |
| | | $3,463,760 |

Relator objected to the assessment upon the ground that the improvements or plant were owned by the United States and

were exempt from taxation. The referee so held. The order strikes from the record that part relating to improvements amounting to $3,353,340, and directs that the rolls be amended accordingly. The referee found that the value of the bare land was $150,000. The assessment thereon was left as made at $110,420.

Two questions arise: *First.* Was the plant taxable? *Second.* If it was not, should the assessment on the land have been $110,420 or $150,000?

*First.* Property of the United States is exempt from taxation. (Tax Law, § 4, subd. 1.)   And that is true even without the statute. (*Van Brocklin* v. *State of Tennessee,* 117 U. S. 151.)

There is a well-settled exception made by the doctrine in the so-called " Land Grant " cases. These hold that where public lands may be alienated under conditions prescribed by Congress and the conditions have been fully met, the land may be taxed by the State even though the patent has not issued and the legal title remains in the United States. (*Railway Co.* v. *Prescott,* 16 Wall. 603; *Railway Co.* v. *McShane,* 22 id. 444; *Northern Pacific R. R. Co.* v. *Traill County,* 115 U. S. 600.)

This doctrine, it is said, is applicable only where the right to the patent is complete and the equitable title is *fully* vested without anything more to be paid or any further act to be done. The same rule has been applied where the United States has sold government realty on contract reserving title until final payment. (*United States* v. *Milwaukee,* 100 Fed. Rep. 828; *Mint Realty Co.* v. *Philadelphia,* 218 Penn. St. 104.)

As a general rule the vendee in possession of real property under an executory contract of sale is regarded as the owner for purposes of taxation, though much depends upon the language of the particular State statute.

Appellants seek to have this general rule applied here. The argument is that the doctrine of the " Land Grant " cases rests upon the fact of a gift, partial or complete, by the government, as distinguished from a contract obligation existing in the cases falling under the general rule. It is contended that there was in the case of land grants no obligation on the part of the government until all the conditions had been met, and hence no equitable right or title in the person or corporation seeking the grant; that until that point was reached, the United States could withdraw its offer and dispose of the land to other persons without liability; whereas here, as in all cases under the general rule, there is an obligation upon the vendee to pay the contract price which came into existence when the contract was entered into.

But that is not the reason given in the books for the " Land

Grant" rule. "Embarrassment to the title of the United States by a sale of the land for taxes seems to have been the concern and basis of those cases." (*Northern Pacific Railway* v. *Myers*, 172 U. S. 589, 598.) And that possibility, of course, trenches to the point of sovereignty. (*Van Brocklin* v. *State of Tennessee, supra.*) Nor was it always true that there was no obligation on the government and hence no right or title in the person or corporation. For instance, in *Wisconsin Railroad Co.* v. *Price County* (133 U. S. 496) it is said: "The title conferred was a present one, so as to insure the donation * * * against any revocation by Congress, except for non-performance of the work," etc. (P. 507.) The title was an imperfect one until the road was located; but then it became fixed, took effect as of the date of the grant and cut off all intervening claims. (Id. 509.)

The acts of Congress relating to the subject and the cases decided under them are many and various, but only one case has been found where the facts do not show that full performance, *i. e.*, a complete equity, was in the mind of the court when it said that an equitable title renders the land liable to taxes. That one is *United States* v. *Canyon County, Idaho* (232 Fed. Rep. 985), and there it will be noted that the defendants were to be restrained from asserting any claim against the government by reason of the tax proceedings or selling at tax sale any interest other than that of the settler.

After the act of July 10, 1886 (24 U. S. Stat. at Large, 143, chap. 764), a different situation was presented. (*Central Pacific R. R.* v. *Nevada*, 162 U. S. 512; *Northern Pacific Railway* v. *Myers, supra.*)

In short, the embarrassment to the title of the United States through a tax sale which was the basis of all those cases exists here. It did not exist in *Baltimore Shipbuilding Co.* v. *Baltimore* (195 U. S. 375), particularly pressed to our attention, because there the interest of the United States in the land was a mere condition subsequent, not a present right *in rem*. Nor is there under our statutes as there was under the Maryland statutes any provision for taxing equitable interests. The remedy for what may be a most unfair condition lies in legislation.

*Second.* The referee found that the value of the land was $150,000, but left the assessment as it had been originally made. "The total assessment only can be reviewed." (Tax Law, § 21, subd. 3, added by Laws of 1914, chap. 277, as amd. by Laws of 1916, chap. 323; Charter of the City of Buffalo [Laws of 1914, chap. 217], § 117, as amd. by Laws of 1917, chap. 504.) The referee in his able opinion and the briefs here deal to some extent

with a distinction between an illegal and an excessive assessment. Too much weight should not be placed on that point. The total assessment was erroneous and the duty of the court was to determine the extent of the error. The court had power to award appropriate relief. (*People ex rel. Gleason* v. *Purdy*, 223 N. Y. 88.) The figures as they appeared on the rolls were *prima facie* evidence only. When it was found that the value of the land in the light of a new situation was $150,000, the extent of the error was the difference between that sum and the total valuation, even though it differed from the figures given on the rolls for the plant.

The order should be modified accordingly, and as modified affirmed, without costs in this court.

All concur.

Order modified in accordance with the opinion, and as modified affirmed, without costs. Order to be settled before CROUCH, J., on two days' notice.