**BANCROFT INVESTMENT CORPORATION, a Florida Corporation, v. THE CITY OF JACKSONVILLE, a Municipal Corporation, et al.**

27 So. (2nd) 162                                    January Term, 1946
January 15, 1946                                              En Banc
On rehearing granted.

*C. D. Towers, W. Raymond Blackard* and *Rogers, Towers & Bailey,* for appellant.

*Austin Miller,* for appellee.

*Howell, McCarthy, Lane & Howell, Charles Cook Howell, Edward McCarthy, Jr.,* and *Charles Cook Howell, Jr.,* as amicus curiae.

SEBRING, J.:

This is an appeal from a decree dismissing a bill of complaint in a suit brought to enjoin the City of Jacksonville, Florida, from enforcing an ad valorem tax on real property, the legal title to which is in the United States of America. The facts of the case are shown by the pleadings and a stipulation between the parties.

The property in question was purchased by the United States from a private owner in 1888. From that time until September 17, 1940, it was used exclusively for governmental purposes and was carried on the tax books of the City of Jacksonville as "tax exempt" property. On April 13, 1940 the government published an invitation for bids for the purchase of the property and Hogan and Adams Corporation, a Florida corporation, became the successful bidder. In due course a contract of sale agreeable to the parties was executed, the down payment was made, and the purchaser was let into possession.

By the terms of the contract the purchase price for the property was fixed at $350,129.00, one-fifth payable in cash and the balance in five equal annual installments with interest on deferred payments; the United States to retain title to the property until full payment of the purchase price and full performance of the contract by the purchaser, the seller thereupon to execute and deliver to the purchaser or its nominee a quit claim deed to the property. The contract further provided that upon failure of the purchaser to comply with all of the terms and conditions of the contract the United States might terminate the contract, retain installments of purchase money already paid, resume immediate possession of the premises, resell the same and recover from the defaulting purchaser any deficiencies in price resulting in

such resale. On September 7, 1940 Hogan and Adams Corporation assigned its interest in the contract to Bancroft Investment Company, the plaintiff in this suit, and on or about September 17, 1940 the plaintiff was put into possession of the property and has used the same since for purely private purposes.

In 1941 the City of Jacksonville attempted to tax the property, assessing the property as follows: "To whom assessed, Bancroft Investment Corporation, a corporation; description of property, Lot 4, Block 37, Hart's Map of Jacksonville; valuation of real estate not claimed as homestead, $85,000.00" By City ordinance dated November 24, 1942 the assessment was changed to read: "To whom assessed, Bancroft Investment corporation, a corporation; Description of Property, Lot 4, Block 37, Hart's Map of Jacksonville (all rights, liens and interests in said property retained and held by the United States of America as security for the unpaid purchase monies are hereby expressly excluded from this assessment, and this assessment is hereby made subject to all such prior rights, liens and interests) : Valuation of real estate not claimed as homestead, $85,000.00."

In 1942 the City of Jacksonville again assessed the property against Bancroft Investment Company, using virtually the same wording as that used in the assessment for 1941, except that the valuation was raised from $85,000.00 to $215,000.00 because of the erection of a five story department store building on the property. Bancroft Investment Company thereupon filed suit in equity to enjoin the enforcement of the tax upon the ground that inasmuch as title to the property was still vested in the United States of America—all installments of the purchase money not having been paid because not at the time due and payable—the property was immune and exempt from taxation by the City of Jacksonville. At final hearing the chancellor entered a decree which sustained the views of the plaintiff. Upon a rehearing the chancellor reversed his previous position—largely, we take it, because of later court decisions bearing on the question which were not available at the time of the first hearing, and which, consequently, were not brought to his attention—and entered

a decree finding the land to be taxable against Bancroft Investment Company, subject, however, to a prior lien in the United States for the unpaid balance of the purchase price. This appeal is from the decree entered at rehearing.

The question is whether the City of Jacksonville may tax lands which have been sold by the Federal Government to a private purchaser under an installment contract whereby title to the land is retained by the government until the purchase price is paid and other conditions performed, where before the time for full performance of the contract and execution of the deed the purchaser is let into possession and thereafter uses the property for private purposes.

The appellant maintains that under federal and state law the property is immune and exempt from such taxation, because it remains property of the United States until a deed of conveyance is given or until the purchaser has fully complied with all conditions entitling him to a deed. The appellee submits that when the contract of purchase was executed and possession delivered, the conditional purchaser became the real beneficial owner of, and acquired the complete equitable title to, the property, the government thereafter retaining only the bare legal title in trust for the purchaser and as security for the balance of the purchase price; and that such beneficial interest of the purchaser may be taxed and the tax enforced against the land subject to the right, lien or interest retained by the government as security for the unpaid purchase money.

Except in states which allow the taxation of separate interests in real property, or in cases where immunity from state taxation has been waived, it seems to be the general rule of both federal and state decisions that where land once owned by the United States for governmental purposes is sold to private purchasers under contract whereby title is retained in the government until complete performance of the contract by the vendee, such land is not taxable under state taxation statutes even though the vendee has been let into possession, until the deed of conveyance has been delivered, or the vendee has acquired a complete equitable title to the property by the performance of all conditions precedent en-

titling him to a deed. See City of New Brunswick v. U. U., 276 U.S. 547, 48 S. Ct. 371, 72 L. Ed. 693; U.S. v. Allegheny County, 322 U.S. 175, 64 S. Ct. 908, 88 L. Ed. 1209; U. S. v. City of Milwaukee, 100 Fed. 828; Port Angeles Western R. Co. v. Clallam County, 20 Fed. (2nd) 202; Pac. Spruce Corp. v. Lincoln County, 21 Fed. (2nd) 586; Lincoln County v. Pac. Spruce Corp., 26 Fed. (2nd) 435; Railway Company v. Prescott, 83 U.S. 603, 21 L. Ed. 373; Railway Company v. McShane, 89 U.S. 444, 22 L. Ed. 747; Wisconsin Central Railroad Co. v. Price County, 133 U.S. 496, 33 L. Ed. 687; Irwin v. Wright, 258 U.S. 219, 42 S. Ct. 293, 66 L. Ed. 573; U.S. v. Rickert, 188 U.S. 432, 23 S. Ct. 478, 47 L. Ed. 532; Copp v. State, 69 W. Va. 439, 71 S.E. 580, 35 L.R. A.N.S. 699; ABR Corporation v. City of Newark, 131 N.J.L. 147, 35 A. (2nd) 473, 133 N.J.L. 34, 42 A. (2nd) 296; Mint Realty Co. v. City of Philadelphia, 218 Pa. St. 104, 66 A. 1130; People v. Burke, 198 N.Y.S. 601, 204 App. Div. 557, Aff. 142 N.E. 320. See also Mundee v. Freeman, 23 Fla. 529, 3 So. 153, which sustains the theory that upon payment of the purchase price for lands from the State of Florida, the purchaser becomes possessed of a complete equitable title to the property and consequently has such an interest as will authorize a tax against the land, even though a deed had not been given; the state, after payment of the purchase price being a mere trustee of the bare legal title.

Appellee has cited decisions which it contends are authority for the proposition that the tax may be imposed, even though the legal title to the property still remains in the United States and the vendee has not become entitled to a deed. We have studied the cases carefully and do not feel that we can follow them.

City of New Brunswick v. United States, 276 U.S. 547, 48 S. Ct. 371, 72 L. Ed. 693, for example, was a case in which the United States Housing Corporation as an instrumentality of the federal government acquired title to property in the City of New Brunswick during the First World War. After the War Congress authorized the Housing Corporation to sell the property but provided that no sale or conveyance on credit should be made without the reservation of a lien for

the unpaid purchase price. Housing Corporation entered into contracts for sale with private purchasers, which provided for the purchase price to be paid in monthly installments and that upon payment of ten per cent. of the purchase price a deed would be issued to the purchaser upon the purchasers giving back a note and mortgage to secure the balance of the purchase price. The purchasers went into possession of the property, paid the ten per cent. of the purchase price and demanded a deed, which was refused because in the meantime the city had assessed taxes against the property. While the Housing Corporation continued to hold the legal title to the property and before the issuance of a deed, the city again assessed the lots for taxation. Thereupon the Housing Corporation joined by the United States brought suit to have the assessments canceled and the sales enjoined. The federal district court held that inasmuch as the purchasers had performed all conditions precedent entitling them to a deed to the property the complete equitable title had passed to the purchasers under their contracts in such manner as to render the lots taxable as their property after the date on which they had become entitled to their deeds. See 1 F. (2nd) 471. The Circuit Court of Appeals reversed the decision of the District Court. 11 F. (2nd) 476. But on certiorari granted, the Supreme Court of the United States affirmed the District Court, saying: "It is unquestioned that so long as the corporation held title to the lots as an instrumentality of the United States and solely for its use and benefit, they were not subject to taxation by the city. Clallam County v. United States, 263 U.S. 341, 344, [44 S. St. 121 L. Ed. 328.] But after the purchasers had made the payment entitling them to receive deeds to the lots, the corporation ceased to hold title solely for the United States, and held partly for the purchasers, who had become the equitable owners of the property and entitled to conveyance of the title subject to their obligation to execute mortgages securing the payment of the balance purchase price. In equity the situation was then the same as if the corporation had conveyed title to the purchasers, as owners, and they had mortgaged the lots to the corporation to secure the unpaid purchase money. As between the cor-

poration and the city, the taxability of the lots is to be determined as if both the deeds and the mortgages had been executed; that is, as if the corporation, while conveying the legal title to the purchasers, had retained a mortgage lien to secure the balance of the purchase price." The court, after laying down this rule then observed, by way of dictum, we think, that "*if* the New Jersey law permits [we see no reason] why the City may not assess taxes against the purchasers upon the entire value of the lots and enforce collection thereof by sale of their interests in the property. *With that the Corporation and the United States have no concern.*" (Italics supplied).

Whatever weight should be given to the City of New Brunswick case as authority for the proposition that a property interest in land less than the legal title is taxable subject to a property lien in favor of the vendor for unpaid purchase money, it certainly is not authority for taxing the property interest of the vendee in the case at bar; it clearly appearing from the record before us that Bancroft Investment Company has not performed all conditions entitling it to a deed from the vendor conveying the legal title—as was the case in the cited decision.

Hence v. City of New Brunswick, (N.J.), 46 7 N.J. Misc. 610 A. 673, appears to support appellee's position, but its persuasive quality is destroyed, we think, when consideration is given to the fact that it is a decision by an inferior court of New Jersey, which has apparently been overruled by the later case of ABR Corporation v. City of Newark, 131 N.J.L. 147, 35 A. (2nd) 473; 133 N.J.L. 34, 42 A. (2nd) 296, decided by the Court of Errors and Appeals of New Jersey, the court of last resort of that state.

City of Philadelphia v. Myers, 102 Pa. Super. Ct. 424, 157 A. 13, is a case wherein the conditional vendee had made all payments which by the terms of the contract would entitle him to a deed from the United States upon his giving back a note and mortgage for the balance of the unpaid purchase price. We construe this case as being in accord with the general rule stated—that the property is taxable after the

vendee has received his deed or has performed all conditions of the contract entitling him to a deed.

Ken Realty Company v. Johnson, 46 Fed. Supp. 408, 138 F. (2nd) 809, cited by appellee as being strongly in point, has been critically examined. The salient facts of the case were that Ken Realty Company has entered into contract to purchase certain real estate from Federal Works Agency, the contract providing for installment payments of the purchase price over a ten year period. While in possession of the property under the contract, but before the time had elapsed for all payments of the purchase price, the tax assessor of the county in which the property was situated gave notice of his intention to assess the property for taxation. The corporation thereupon filed its bill for injunction and for a decree and declaratory judgment that the property involved was not subject to City, County or State ad valorem taxes, and that the rights of the plaintiff in and to such property were not subject to such taxes. The bill of complaint was tested by motion to dismiss. On hearing the motion was granted and the bill dismissed on the principal ground *that under Alabama taxation statutes a possessory interest in realty is subject to an ad valorem tax.* As we view the cited case, it does not bear on the case at bar, for it is clear that in Florida authorization for the taxation of separate interests in real estate does not exist, except in instances not necessary to be considered here. See Sec. 193.22, Florida Statutes 1941,—"Assessment of land, timber and turpentine rights."

Appellee leans heavily on Petition of S. R. A. Inc., 213 Minn. 487, 7 N.W. (2nd) 484; 219 Minn. 493, 18 N.W. (2nd) 442. In that case it appears that the United States had acquired title to certain proprty in 1867 and had occupied the same for many years as a site for a post office. For some years prior to May 26, 1939, the premises had not been in use by anyone. On that date the government entered into a contract for deed with S. R. A. Incorporated, the vendee to pay the purchase price in yearly installments and to receive a quit claim deed to the property upon final payment. Upon execution of the contract the vendee entered into full possession of the property, razed the existing buildings thereon,

erected another, set off for an automobile parking lot that portion of the premises not needed for the building, and leased the whole enterprise to others for commercial purposes and for the rental income derived therefrom. On May 1, 1940, before all installments had been paid or had become due and payable, the county tax assessor assessed the property upon the same basis as other like property, listing it for taxation as being owned by "S. R. A. Incorporated 'subject to fee title remaining in the United States of America.'" Instead of paying the taxes so levied, S. R. A. brought proceedings to procure an order of the court determining that the title to the property was in the United States and consequently exempt from state taxation. Under the facts presented the court held the whole property taxable as the property of the vendee, subject to a security lien for the unpaid purchase price in favor of the United States.

As we read the S. R. A. cases, and the statutes cited in connection therewith, the Minnesota court bottoms its conclusion that the property interest of the vendee may be taxed and the tax imposed against the res, upon two propositions: First, under the Minnesota statute relating to general property taxes, real estate, for taxation purposes, includes "the land itself," all "structures and improvements" upon it, "all rights and privileges" belonging or appertaining to the land, and "all mines, minerals, quarries, fossils, and trees on or under same." See Minn. St. 1941, Sec. 272.03, subd. 2, Mason St. 1927, Sec. 1977. But by a separate taxing statute, being Minn. St. 1941, chapter 287; chapter 328, Laws of 1907, it is provided " 'Real property,' 'real estate,' and 'land,' in addition to the meaning thereof contained in chapter 500, include all property a conveyance whereof may be recorded or registered by a register of deeds under existing law. . . . The word 'mortgage' means any instrument creating or evidencing a lien of any kind on such property, given or taken as security for a debt, notwithstanding such debt may also be secured in part by a lien upon personalty. . . . An executory contract for the sale of land, under which the vendee is entitled to or does take possession thereof, shall be deemed, for the purposes of this chapter, a mortgage of said land for the unpaid balance

of the purchase price." See Minn. Stat. 1941, Secs. 287.01, 287.02, 287.03, 287.04, Mason St. 1927, Sec. 2322. Secondly, " . . . contract for the sale of land, part of the purchase price being paid, vests in the vendee an equitable title in fee with the bare legal title remaining in the vendor as security, and upon payment the vendor holds it in trust for the vendee." 18 N.W. (2nd) 450. " . . . the equitable estate, in its entirety, passes immediately to the vendee at the moment the contract goes into effect, and the bare legal title for security purposes remains in the vendor." 18 N.W. (2nd) 499. " 'The relation is substantially that of mortgagor and mortgagee. . . . The only difference is a more efficient remedy in case of default.' " 7 N.W. (2nd) 488. "The character or status of the owner of the equitable title and not that of the holder of the legal title determines whether the equitable estate is subject to taxation." 18 N.W. (2nd) 452.

It will be noted that the first proposition rests squarely upon the Minnesota court's construction of its own local taxing statutes. And though we have difficulty in following the line of reasoning by which the court arrived at its conclusion on the point—section 272.03 of the Minnesota statutes being a statute dealing with the levy and assessment of ad valorem taxes on real property, and sections 287.01 to 287.04, inclusive, being statutes dealing with the imposition of a registry tax or fee on real estate mortgages offered for public recordation— we assume that the theory was that by virtue of the wording of the statutes an executory contract for sale of land coupled with possession became, under the statute, a real estate mortgage on such lands; and that a real estate mortgage, being nothing more than an instrument creating or evidencing a lien on real property, could not become a lien on land unless the mortgagor held title to the land on which the mortgage was given, hence the land could be taxed as property as to which the vendee had the legal title, as would be the case of a mortgagor. Whether the reasoning behind the proposition is sound is not for us to say, for the interpretation to be placed upon Minnesota statutes and their applicability to Minnesota property and property interests is the peculiar province of the courts of that state and not of

this tribunal. But however that may be, we find ourselves unable to follow the conclusion reached by the Minnesota courts on this proposition, as we do not think that our own taxing statutes are susceptible of such interpretation.

On the second proposition, we think it sufficient to say that we do not hold to the view that "The character or status of the owner of the equitable title and not that of the holder of the legal title determines whether the equitable estate is subject to taxation." Under Florida taxing statutes the levy and assessment is on the realty itself, at its full cash value, regardless of the existence of estates in it, Wolfson et al. v. Heins et ux., 149 Fla. 499, 6 So. (2nd) 858. Neither do we think it the law of this jurisdiction that upon the execution of a contract for sale of realty whereby the vendor is to retain the legal title until complete payment of the purchase price but the vendee is to be let into possession, that the complete "equitable title in fee" immediately passes to the vendee with only the *"bare legal title"* remaining in the vendor, or that "The relation is substantially that of mortgagor and mortgagee. The only difference [between the rights of such conditional vendor and a mortgagee being] a more efficient remedy in case of default." We have said, it is true, that "in equity, where the relation of vendor and vendee has been established by the vendor executing a contract to convey the legal title to property upon the payment by the vendee of the purchase price that he has obligated himself to pay, the vendee is regarded as the real beneficial owner, even though he has not paid the purchase price. The vendor holds the legal title as trustee, and when the terms of the contract are complied with he is bound to convey." Atlantic Beach Improvement Corp. v. Hall, 143 Fla. 778, 197 So. 464. But it was likewise pointed out in the same decision that "On strict analysis, . . . the relationship is not that of an ordinary trustee and beneficiary. For 'while the vendor holds the legal title subject to an equitable *obligation* to convey to the purchaser on payment of the purchase money, he has, unlike an ordinary trustee, a personal and *substantial interest which he may actively assert.'* " (Italics supplied).

That this is the rule of the Florida decisions is indicated

by Rain v. Roper, 15 Fla. 121, wherein it was held that the lands of the vendor under an executory contract of sale with the title retained could be set aside for widow's dower, which assignment of dower was subject to be defeated only by the vendee's compliance with the terms of the contract and a subsequent proceeding, to compel a conveyance; the court pointing out that "The purchaser's title must grow out of his equitable rights under his contract." In Latin-American Bank v. Rogers, 87 Fla. 147, 99 So. 546, a case in which a contract for sale of lands had been executed and the vendee let into possession, the court said "Upon full payment of the purchase price the estate of the vendee *may ripen* into a *complete equity* entitling him to a conveyance of the legal title according to the terms of the contract . . . " Prior to that time, declared the court, the estate of the vendor in and to the property is such that the land is subject to levy and sale under execution as "lands and tenements" of the vendor. So in Marion Mortgage Co. v. Grennan, 106 Fla. 913, 143 So. 761, 87 A.L.R. 1492, it is recognized that even after the execution of such a contract with the vendee in possession the vendor continues holding such an interest or estate in the lands as may be mortgaged; the mortgagee acquiring a lien on the property subject only to the right of the vendee to demand a conveyance when he has fulfilled his contract. Doubtless other decisions can be found, but these serve to illustrate the point that this court is not committed to the doctrine of the "bare legal title" theory in the case of an executory contract for the sale of land where legal title is retained in the vendor until complete performance of the contract.

While it must be confessed that some of the Florida decisions have likened the relationship between such a vendor and his vendee to that of mortgagee and mortgagor, we think that in one vital particular, at least, the analogy breaks down: In the mortgagor-mortgagee relationship the mortgagee's lien for the debt is against the complete legal and equitable title of the mortgagor in and to the lands. In the vendor-vendee relationship the vendor's lien does not extend to the legal title at all (for that remains in the vendor until a deed

is given) but is against only such equitable interest in the property as the vendee has acquired by reason of his partial payment of the purchase price; which interest may be sold and the vendee's equity extinguished by a proceeding in equity in the nature of a strict foreclosure should the vendee default in his contract—the proceeding being one to enforce the terms of the contract. See Schmidt v. Kibben, 100 Fla. 1684, 132 So. 194.

Moreover, in dealing with the problem of the taxation of the property it must not be overlooked that the State of Florida was admitted into the Union in 1845 upon the express condition that it should never interfere with the primary disposal of the public lands lying within its boundaries, "nor levy any tax on the same whilst remaining the property of the United States." 5 Stat. 742. At the first session of the legislature of the new state that body enacted into law section 3, Chapter 25, Laws of Florida, 1845, providing that land contracted for, purchased or otherwise acquired within the State by the United States as sites for "forts, magazines, arsenals, dockyards, and other needful buildings" should be exempt from "any taxation under the authority of this state while the same shall continue to be owned, held, used and occupied by the United States for the purposes above expressed and intended, and not otherwise." See Sec. 6.04 Florida Statutes, 1941. In furtherance of the condition upon which it had been admitted into the Union, Florida thus granted tax immunity to the United States as to lands owned, held, used, and occupied by the government for governmental purposes; and whether this immunity is ever to be waived and consent given to the taxation of such property by the State, is the function of Congress. (For instances in which Congress has waived its tax immunity and has consented to state taxation of lands, see 12 U.S.C.A. Secs. 264(p), 531, 931, 1020f, 1433, 1463, 1714; 15 U.S.C.A. Sec. 610; 43 U.S.C.A. Secs. 455, 455a). While the tax immunity statute of 1845 continued to remain on the statute books, the legislature of Florida, at a session held fifty years later, enacted into law section 4, chapter 4322, Laws of 1895. The 1895 statute provided: "The following property shall be exempt from taxation: First, all property,

real and personal, of the United States and of this state . . . "
Both section 3, chapter 25, Laws of 1845 and section 4, chapter 4322, Laws of 1895, have been extended on the statute books of Florida throughout the years, without material change or modification. See Secs. 6.04, 192.06(1), Florida Statutes 1941. The language of section 4, chapter 4322, supra, is plain and unqualified. There is nothing in the statute or in the judicial decisions of this court to indicate that the unqualified words of the statute are to be given any meaning other than that all property as to which the United States holds something more than bare legal title is exempt from state taxation regardless of the use of occupancy of said property.

Whether the legislature may change its statutes so as to extend the provisions of the tax exemption laws only to such real and personal property of the United States as may be actually "owned, held, used and occupied" exclusively for governmental purposes, or may so amend same as to authorize the taxation of separate interests in property, is a question not before us. But so long as our statutes remain in force and effect in their present form we think it perfectly plain that no authority exists from the taxation of the equitable interest of Bancroft Investment Company in and to the real estate, the legal title of which rests in the United States; there being no lawful authority under the laws of Florida for splitting property interests in land for the purpose of determining the incidence of taxation.

The decree appealed from should be reversed.

It is so ordered.

BROWN, BUFORD and THOMAS, JJ., concur.

CHAPMAN, C. J., TERRELL and ADAMS, JJ., dissent.

ON REHEARING GRANTED

TERRELL, J.:

Appellant brought suit against appellees to enjoin the collection of ad valorem taxes on Lot 4, Block 37, Hart's Map of Jacksonville. The trial court dismissed the bill of complaint, and, on appeal, this court reversed that judgment in a divided opinion filed January 15, 1946, wherein a full statement of the

salient facts is detailed. A rehearing was granted to review that decision.

The opinion of January 15 was grounded on two postulates: (1) The property in question was immune from state taxation under federal law; (2) the property in question was exempt from state taxation under the Florida statutes. Since this opinion was filed, the Supreme Court of the United States, in S. R. A. Inc. v. State of Minnesota, decided March 25, 1946, has settled the first question contrary to our holding. It held that when the vendee enters into possession of the real estate under contract of purchase it becomes subject to the jurisdiction of the state for tax purposes.

So the only question that we are required to review on rehearing is whether or not the property in question is exempt from taxation for state and municipal purposes under the Florida statutes. Counsel for appellant insists that this question requires a negative answer because the tax imposed is, in effect, a tax on an interest in land which is not authorized under Florida law.

Considerable space in the briefs is devoted to the effect of Sections 6.04 and 192.06, Florida Statutes 1941, as applied to the question raised. The former section has to do with the question of jurisdiction over lands acquired from the state by the United States. The latter section has to do solely with the question of exemption from taxation, as authorized by Section 1, Article IX of the Constitution. We will say more about these statutes later, but, as to their history and effect and whether or not they involve a "separate interest," a "bare legal title," an "equitable fee," or some other interest in land, we do not deem it necessary to labor our views by a lengthy treatment. To do so would liken the discussion to the fable of the old fox exhausting his bag of tricks in an effort to distract the hounds from the main issue.

A brief analysis of the factual picture will be helpful. It is admitted that the lands in question were purchased by the United States in 1888 and that they were used as a post office and court house by the Federal Government until 1940, when they were sold to private parties and, through mesne conveyances, acquired by appellant. The contract of sale

provided for immediate delivery to the purchaser and the payment of a consideration of $350,129, one-fifth of which was payable in cash and the balance in five equal annual installments with interest on deferred payments. The contract also provided that the seller execute a quitclaim deed to the purchaser and retain title until the contract was fully performed. The purchaser took possession at once and constructed a five-story department store on the premises, which he is now leasing for that purpose. The Federal Government released all control and dominion to the purchaser and is not a party to this litigation.

In 1941, the City of Jacksonville imposed an assessment on the property in the sum of $85,000. In 1942, this assessment was raised to $215,000, because of the erection of the five-story department store, which was alleged to have cost one-half million dollars. Appellant filed suit in equity to enjoin collection of the tax, on the theory that the property was immune from taxation under federal law and was exempt from taxation under state law because title was still vested in the United States, all installments not having been paid.

Under this state of facts, is the property in question exempt from the payment of state and municipal taxes under state law? As we stated in the forepart of this opinion, the question of immunity under federal law was foreclosed by S. R. A. Inc. v. State of Minnesota, decided by the Supreme Court of the United States, March 25, 1946, not yet reported. In our view, the question of exemption, like that of immunity, requires a negative answer.

Counsel have complicated the question by approaching it through a labyrinth of technical dialectics, attempting to demonstrate that the tax imposed was a "separate interest" in the rem, or some other interest in the rem, rather than on the rem, itself. S. R. A. Inc. v. Minnesota is a complete answer to this contention, but we approach the question on other and what appears to us irrefutable grounds. We approach it on the premise that this is a democracy in which every parcel of property is expected to bear its due portion of the burden of government, unless exempted by the Legislature in the manner provided by Section 1, Article IX of the

Constitution. Courts have no more important function than to direct the current of the law in harmony with sound democratic theory.

Exemptions from taxation are authorized for the purposes enumerated in Section 192.06, Florida Statutes 1941, the pertinent part of which is as follows:

"(1) All property, real and personal, of the United States and of this State . . . "

Is the property in question property of the United States, entitled to exemption from state and municipal taxes under this provision of law? The theory on which lands are exempted from taxation is that they are held and used for municipal, educational, scientific, literary, religious, or charitable purposes. Not one of these elements can be attached to the use of the lands in question. The United States sold and transferred them to appellant, and they are being used in private enterprise. True, they were sold under executory contract, but the United States executed its quitclaim deed to them, it released dominion over them, it claims no interest whatever in them, and it has turned them over to appellant, who has had complete use and occupancy of them from the date the contract was executed. They are enjoying police protection and every other service the city furnishes; the appellant or its assigns is using them in legitimate business surrounded by and in competition with other businesses which are bearing their part of the burden of government; the United States is not a party to this suit, is not here complainant, and has completely abandoned the property. Under this state of facts, we find no basis in law or reason why the lands in question should enjoy exemption from taxation.

Appellant rests its thesis on a literal interpretation of the quoted statute defining exemptions, but this court is not limited to that. It is authorized to look through form to fact and substance to answer the question of tax exemption or tax liability. 5 Am. Jur. Sec. 409. If the positive law (constitution or statute) does not give a direct answer to the question, the court is at liberty on the factual basis to indulge the rule of reason to reach a result consonant with law and justice.

If I abandon my homestead, it loses its right of exemption from taxation as soon as abandoned. We think the rule is general; that property dedicated to municipal, educational, religious, or other purposes that exempt it from taxation, reverts to its original status and becomes subject to state and municipal taxes as soon as it is abandoned for the purpose that fixes its exemption status. We think what we have said concludes the question, but Section 6.04 is also persuasive. This statute deals with the question of jurisdiction on the part of the state and federal governments over lands acquired by the latter for needful federal purposes and concludes with this limitation exempting "said lands from any taxation under the authority of this state while the same shall continue to be owned, held, used, and occupied by the United States for the purposes above expressed and intended and not otherwise." The statute does not list "post office" sites, but the statute listing the lands that may be acquired (Section 6.02) has the omnibus clause, "other needful buildings," so we would strain no rule of interpretation to hold that they were included. At any rate, every rule of interpretation cuts off the right of tax exemption as soon as it is abandoned for the use that warrants it.

In S. R. A. v. State of Minnesota, the Supreme Court of the United States held, in terms that the equity of a purchaser under an executory contract of sale is, in fact, the realty and that such legal title as the United States held was held only as security. This holding is consistent with the holding of this court in Porter v. Carrol, 84 Fla. 62, 92 So. 809, and Dean v. State, 74 Fla. 277, 77 So. 107, wherein it was held that the one who holds the equitable interest is the owner for taxing purposes.

This reasoning is supported by City of New Brunswick v. U. S. et al., 276 U. S. 547, 72 Law Ed. 693, where it was held, in effect, that when the vendee takes possession of lands purchased from the United States under an executory contract and nothing remains to be done on the part of the vendor but execute and deliver the deed, the lands are then subject to state and municipal taxes. Miami Bond and Mortgage Co. v. Bell, 101 Fla. 1291, 133 So. 547; Kenn Realty

Company v. Johnson, 138 Fed. (2nd) 809. Such is the rule between individual vendors and vendees, and we are shown no reason why it should be different if the government happens to be the vendor.

The real question here is the application of the quoted exemption statute to the facts recited. We never decide such questions in isolation, but we lay the statute beside the facts and deduce what appears to be the rational result. If a court is not permitted to look through the letter of the statute and apply it to facts as they exist, then the legislative declaration of a falsehood may, in many cases, amount to the judicial declaration of a truth. In this case it amounts to selecting one taxpayer in one of the most desirable business areas in Jacksonville and placing him in a privileged class. To so interpret the exemption statute does not square with reason or justice.

We, therefore, conclude that appellant is the owner of the taxable interest in the property in question, that the United States has abandoned such use of it as gave it an exemption status, and that it is now amenable to taxation under the law of Florida. It follows that our former opinion is receded from, and the judgment appealed from is affirmed.

CHAPMAN, C. J., BUFORD and ADAMS, JJ., concur.

BROWN, THOMAS and SEBRING, JJ., dissent.

SEBRING, J., dissenting:

On petition for rehearing granted we are asked to recede from our former majority opinion filed January 15th, 1946, and to hold that the property involved in this litigation is subject to ad valorem taxation by the City of Jacksonville. It is urged by the appellee in this behalf that no judgment other than an affirmance can now be entered in view of an opinion by the United States Supreme Court filed since the original hearing in this cause, holding that such property is susceptible to state taxation. See S. R. A. Inc., Petitioner v. State of Minnesota, cases 254 and 255, filed March 25, 1946.

Our original opinion in this case was bottomed on two propositions: (1) the property involved, as to which the United States held legal title, was *immune* from state or mu·

nicipal ad valorem taxation under the Federal decisions; (2) The property involved was *exempt* from state or municipal ad valorem taxation, under Florida statutes.

We are of the view that the recent decision of the United States Supreme Court, cited above, now makes it clear that the property involved is not *immune* from State or municipal taxation, as was held in our former opinion. However, we do not consider that the decision has affected the question whether or not property as to which the United States has legal title is *exempt* from state or municipal taxation under prevailing Florida law.

We hold, therefore, on authority of S. R. A. Inc., Petitioner v. State of Minnesota, supra, that we must now recede from our former holding that under the facts of the case the property is *immune* from state or municipal taxation; and in this particular the former opinion is modified. We adhere to our former view, however, that the property involved is *exempt* from state or municipal taxation so long as the legal title thereto remains in the United States, or until the vendee under the contract for purchase has acquired a complete equity in the lands or has otherwise become entitled to a deed to the whole property interest.

From the conclusions reached, it is our view that the decree appealed from should be reversed.

THOMAS, J., concurs.