LEWIS, J.,
dissenting.
I respectfully dissent because I would conclude that the plain and ordinary language of the TDT statute requires the tax to be levied on the full consideration charged by an OTC that uses the merchant model business plan.[2] The statute straightforwardly provides that the “[t]ax shall be due on the consideration paid for occupancy....” § 125.0104(3)(a)2.a., Fla. Stat. (2014). Additionally, the statute directs that “[t]he tourist development tax shall be levied, imposed, and set ... at a rate of 1 percent or 2 percent of each dollar and major fraction of each dollar of the total consideration charged for such lease or rental.” § 125.0104(3)(c) (emphasis supplied). Nothing in this language suggests that the consideration paid to secure the occupancy of a hotel room may be divided up such that the TDT is levied on only a portion of the transaction.
As recognized by the majority, when statutory language is unambiguous, the statute must be given its plain and obvious meaning. See majority op. at 733; see also N. Carillon, LLC v. CRC 603, LLC, 135 So.3d 274, 277 (Fla.2014). The total consideration charged is the total amount charged to the customer to reserve the hotel room, regardless of whether that reservation is made through an OTC or directly through the hotel. To levy the tax on only a portion of the consideration charged is contrary to the plain language of the statute. However, despite the clear intent expressed by the words “total consideration charged,” the majority nonetheless concludes that the language of the statute does not “require taxation on the *740 total monetary charges incurred by customers „ who obtain reservations through the OTCs’ Internet-based services.” majority op. at 734 (emphasis supplied).
An ÓTC customer pays one lump sum for the hotel room to the OTC. This lump sum, referred to by the OTCs as the “offer price,” “nightly reservation rate,” “room cost,” or “room rate,” includes the bundled-together charges for the discounted room reservation and the markup for services charged by the ÓTC, with no indication of how the payment is allocated between these charges. The customer is unaware of what portion of the consideration paid to the OTC is transferred to the hotel, and knows only that the “room cost” or “room rate” is the amount he or she must pay to reserve the right to occupy the hotel. Accordingly, the only clear and common sense reading of the statute is that the “total consideration charged for occupancy” is the total amount the customer is charged to reserve the hotel room, or, in other words, the total amount paid to the OTC.
Additionally, the statute directs that the tax shall be charged by the party that receives the consideration for the lease or rental and collected from the customer at the time that he or she pays such consideration. See § 125.0104(3)(f).. In a merchant model transaction, the, customer makes his or her payment directly to the OTC, not the hotel, and in fact never makes a payment to the hotel for the room reservation.[3]. Although the hotel receives payment for the room reservation, the OTC remits this payment.' Because the OTC is not the customer, the plain meaning of the statute is that the TDT is to be collected on the total consideration paid to the OTC at the time of- the transaction between the OTC and the customer.
Moreover, the substance of the transaction is that the customer submits a payment to the OTC for the right to occupy the hotel room. The markup charges for service are- part of the transaction that grants the customer the right of occupancy, and such charges are only incidental to the predominant purpose of the transaction — the reservation of the hotel room. In resolving questions that relate to tax liability, the , relevant consideration is the substance of the transaction, rather than the form. See Leon Cnty. Educ. Facilities Auth. v. Hartsfield, 698 So.2d 526, 529 (Fla.1997) (citing Bancroft Inv. Corp. v. City of Jacksonville, 157 Fla. 546, 27 So.2d 162, 171 (1946)). The interpretation given to the statute by the majority allows hotels to place form, over substance.. Should hotels wish to reduce the amount of TDT paid, they can simply collect the tax on a price charged exclusively for the use of the room, then label various supplies and benefits traditionally included in a hotel reservation as services — housekeeping services, room supplies, et cetera — thereby avoiding tax on these “services.”
Further, although two different models may be used by travel companies — the agency model or the merchant model — the TDT is imposed on the full consideration paid by the customer for the right to occupy the room under only the agency model. The majority concludes that because the consideration for both the travel agency’s services and the hotel room are charged by the hotel under the agency model, the entire amount is taxable under the TDT. See majority op. at 735. Under this holding, by categorizing a portion of the consideration as a service charge, hotels are able to avoid tax liability on a portion of the transaction. However, regardless, of which business model is employed, the *741 purpose and result of the transaction is the same — to reserve a hotel room with the aid of a travel company. Because the substance of the transactions are the same, the same tax liability should be imposed. See Hartsfield, 698 So.2d at 529 (citing Bancroft Inv. Corp., 27 So.2d at 171). Moreover, with respect to excise taxes, all similarly situated taxpayers should be treated alike. See Gray v. Cent Fla. Lumber Co., 104 Fla. 446, 140 So. 320, 325 (1932).
Additionally, reading the statute to apply to the total consideration charged by an OTC would be consistent with the administrative rule promulgated by the Florida Department of Revenue that interprets the statute to require that the tax be charged on the full amount paid to an OTC. Rule 12A-1.061(4)(b)1. of the Florida Administrative Code states that a rental charge includes “any charge or surcharge to guests or tenants for the use of items or services that is required to be paid by the guest or tenant as a condition of the use or possession, or the right to the use or possession, of any transient accommodation.” (Emphasis supplied). The interpretation given to a statute by an agency charged with the enforcement of that statute is afforded great deference. See Fla. Dep’t of Revenue v. Fla. Mun. Power Agency, 789 So.2d 320, 323 (Fla.2001).
Several other state and federal courts have also reached this result. See Vill. of Rosemont, Ill. v. Priceline.com Inc. No. 09-C-4438, 2011 WL 4913262 (N.D.Ill. Oct. 14, 2011); see also Gity of Charleston, S.C. v. Hotels.com, LP, 586 F.Supp.2d 538 (D.S.C.2008); Expedia, Inc. v. City of Columbus, 285 Ga. 684, 681 S.E.2d 122 (2009). But see Expedia, Inc. v. City & Cnty. of Denver, Co., — P.3d-, No. 13CA0779, 2014 WL 2980979 (Colo.App. July 3, 2014) (concluding that the Lodger’s Tax ordinance does not unambiguously include OTC service fe'es, and holding that the tax does not apply to such fees). Although the wording of the various tax statutes differs, the substance of the tax is similar. For example, the Illinois statute at issue in Rosemont provided that a tax of 7% of the room rental rate was to be imposed on the renter, and would be collected by the hotel or motel. 2011 WL 4913262, at *1. The Illinois court concluded that the OTC service fee was part of the agreement reached for access to the room, and therefore was subject to the tax. Id. at *3. Similarly, in City of Columbus, the statute provided that the tax would be charged ,on lodging charges actually collected. 681 S.E.2d at 125. The court there held that because the room rate offered by the OTC included the service fee, that fee was taxable under the statute. Id. at 128. I agree with these cases, and would hold here that the, service fees charged by OTCs are part of the total consideration and are therefore subject to the TDT.
Accordingly, for the- reasons- stated above, I respectfully dissent.
POLSTON, J., concurs.

. Under the merchant model business plan, customers reserve a hotel room on the OTC webpage and pay the OTC directly for the transaction. The OTC later transmits a discounted payment for the room reservation to the hotel and retains the rest as a facilitation fee or service charge. Currently, and under the result reached by the majority, the TDT is levied on only the portion of the consideration paid to the OTC that is remitted to the hotel, and not the service charge that is retained by the OTC.

. The customer does pay the hotel for incidentals he or she incurs during the stay.