**JOHN WHITTINGTON and MATTIE WHITTINGTON v. T. J. DAVIS and OTHALIA DAVIS, his wife.**

32 So. (2nd) 158            June Term. 1947
July 29, 1947             Special Division A
Rehearing denied September 9, 1947

*Jerry J. Sullivan,* for appellants.

*Jones, Latham & McLane* and *Holsberry & Holsberry,* for appellees.

TERRELL, J.:

In 1892 the Board of Public Instruction of Escambia County purchased lots 18 to 23 inclusive, in Block 37 of West King Tract of Pensacola. Lot 18 was conveyed to the purchaser by Walter Tate and lots 19 to 23 inclusive were conveyed to it by Warren E. Anderson and F. G. Renshaw. A

school building was constructed on said lots and they were used for school purposes until 1921, when the Board of Public Instruction discontinued their use as a school site and placed them on the market. Appellants entered into an agreement with the Board of Public Instruction to purchase the six lots, all being contiguous, and employed the late John P. Stokes who was practicing law in Pensacola to look after the details of the transaction, see that the title was clear and that the deed was correctly executed. The deed was executed by the Board of Public Instruction to appellants August 29, 1921, but through error in copying the description, lot 18 was omitted. Appellants having paid for all the lots and being under the impression that their deed called for all of them, went into possession at once, took down the school building and constructed four tenant houses on them, all facing Jackson Street.

In 1937 appellants constructed a fifth house on lot 18, described as Number 611, North "D" Street. Appellants continued in peaceful possession of all six lots, not knowing of the failure of the scrivener to include lot 18 in the calls of his deed. Appellants annually paid state, county and municipal taxes on lots 19 to 23 inclusive, thinking that they were paying on the six lots. Because of the error in description the record title to lot 18 continued in the Board of Public Instruction and it was not assessed for taxes till the years 1939 to 1942 inclusive (eighteen years after the purchase by appellants), when it was assessed as "unknown." For the years 1943 and 1944 it was eroneously assessed to another, and later by foreclosure for non-payment of taxes under Chapter 194, Florida Statutes 1941, the title was adjudicated to be in the County of Escambia.

On March 26, 1946, Escambia County sold lot 18 to appellees, executing them a tax deed pursuant to Chapter 194. Appellees forthwith made demand on appellants and their tenant for possession but their demand was refused. This case was then instituted by petition on the part of appellees praying for an order directed to appellants, commanding them to show cause why they should not deliver possession of lot 18 with improvements to the petitioners. Appellants filed their

answer to the rule to show cause, a motion to strike the answer was granted and final judgment was entered for appellees, from which this appeal was prosecuted.

The point for determination is whether or not one in the position of appellants holding possession of and asserting a right in lands superior to the claim of the grantee under a tax deed, may, in his answer to the rule to show cause why writ of possession should not issue against him, as provided by Chapter 22079, Acts of 1943, offer such a defense as may defeat the execution of the possessory writ and thereby nullify the tax title.

The answer to this question turns on the interpretation of that part of Section 20, Chapter 22079, Acts of 1943, amending Section 43, Chapter 20722, Acts of 1941, as follows:

"Any person, firm, corporation or county who may be the grantee of any tax deed under this Act, or any county acquiring lands for delinquent taxes as herein provided, or the county's grantee of such lands upon sale as herein authorized, shall be entitled to the immediate possession of the lands described in such deed or decree, and after making demand for possession, if the same is refused, may file a petition in the Circuit Court for such county, and thereon obtain an order to show cause from the Circuit Judge, returnable in five days, directed to the person or persons so refusing to deliver possession, requiring them to show cause why writ of possession should not issue. Upon the filing of the answer to the rule to show cause, the matter shall proceed as in chancery cases. If, upon such hearing, no cause is shown, an order may issue from the Circuit Judge to the Sheriff of the county directing him to put the grantee in possession of such lands."

Casual examination of the quoted act discloses that it provides a summary proceeding for one with a tax deed issued under Chapter 194, Florida Statutes 1941, to recover possession of the lands described therein when the owner or person in possession refuses to surrender possession. The purchaser under the tax deed may file a petition in the Circuit Court and secure an order directed to the person in possession requiring him to show cause why writ of possession should not

issue against him. The person in possession is allowed five days to file his answer to the rule to show cause when the "matter shall proceed as in chancery cases." If upon hearing, the answer shows no defense, the writ of possession may be issued and placed in the hands of the sheriff. Whether or not a defense to the petition is made depends on the issue made by the answer to the petition. To "proceed as in chancery cases," contemplates any defense amenable to a suit in equity, so it would be futile to contend that the person in possession is precluded from offering any legal defense in his answer, and its sufficiency to defeat the possessory writ is one for the chancellor to determine. We refuse to assume that the legislature provided for other than a bona fide procedure and if the party in possession sets up a good defense he should be given the advantage of it.

The essential facts on which appellants predicate their defense are not in dispute. It is admitted that lot 18 was purchased by the Board of Public Instruction of Escambia County, in 1892, that it was used for school purposes till 1921, at which time it was placed on the market and bargained to be sold to appellants, that appellants employed counsel to represent them and see that their deed was properly executed, that the same was regular and the title marketable, that they relied on their counsel because they were ignorant of the niceties of land conveyancing, that they had always assumed that the conveyance of lot 18 was regular until demand was made on them and their tenant to surrender possession, that they had annually paid taxes on the lots conveyed to them, thinking that lot 18 was included, but had only recently learned that they were in error as to lot 18, that in 1937 they constructed a house on lot 18 which they had rented continuously, that their possession of lot 18 had been at all times peaceable, that they had only recently learned that a tax deed had been issued against it, though it now appears that the record title was and still is in the Board of Public Instruction of Escambia County.

We think this was a good defense in equity to the rule to show cause why the writ of possession should not issue. When one unlettered in the niceties of real estate transac-

tions bargains for a piece of land and hires a good lawyer to see that the conveyance to him is in all respects regular, the law does not require him to do more to protect the bona fides of his purchase. When he follows up the transaction by offering to pay his taxes on the land every year for twenty-five years, and at considerable expense builds a house on said land and continues to offer to pay taxes, and has good reaeson to believe he has paid them, equity will not permit the county to hold it off the tax books for eighteen years, recognizing the title of the School Board and its non taxable status, then reverse its policy by placing it on the tax books and disposing of it as shown here without notice to him, there never having been any determination that the tax status of lot 18 had changed.

In this conclusion we do not overlook our holding in Bancroft Investment Corp. v. City of Jacksonville, 157 Fla. 546, 27 So. (2nd) 162; Reina v. Hope, 158 Fla. 771, 30 So. (2nd) 172, and the requirement of Section 1, Chapter 22079, Acts of 1943, that no sale or conveyance of real estate for the non-payment of taxes shall be held invalid except on proof that it was not subject to taxation, or that the taxes had been previously paid, or that the property had been redeemed prior to the execution and delivery of the tax deed. Neither do we overlook the requirement of Section 42, Chapter 22072, Acts of 1943, that after the entry of the decree of foreclosure, all right, title, interest in or liens on such property shall be cut off and extinguished and forever declared null and void and the title to such lands when conveyed by the county shall be construed in all respects as a new original title.

These provisions were parts of the same act as that under review, and all should be construed as in pari materia or so as to give such a field of operation. Chapter 22079 was not designed to punish the man who makes an honest endeavor year after year to pay his taxes as appellants were alleged to have done in this case. Neither was it designed as a ruse to cut one loose from a title that he was offering year after year to preserve. We have not before been called on to construe that part of the act brought in question, but in our judgment the interpretation here given in no wise detracts

from the force and effect of the act as a whole, at the same time it affords a defense in equity to one caught in the dilemma in which appellants found themselves after taking every precaution that a reasonable man could be expected to take to protect himself.

This interpretation reaches a just determination while any other would work a great injustice. It does no violence to the scheme of tax foreclosure outlined in the act, and is in harmony with the well settled principle that the law does not purposely work an injustice. The legislature did not so design it and the courts should not permit it when one has made every effort in reason to comply with it. In a free country like ours the right of the citizen is one of the great concerns of government and when the citizen is accorded justice the government wins, but when the ciizen is wronged the government loses.

It is accordingly our view that the chancellor committed error in granting the motion to strike appellants' answer. Since the record title to lot 18 was and still is in the Board of Public Instruction, on the face of the record, it was not subject to taxation. It certainly would not be permissible to recognize this status for a period of years and then change its status and sell it from under one who had purchased and was offering to pay the taxes. We are convinced the answer proffered a good defense in equity. If the chancellor was in doubt as to any of its allegations he should have permitted proof, and unless found to be false, the most that appellants should have been required to do would have been to refund appellees such sums as they had expended for the lands. There was no theory under which they should have been permitted to hold the lands and the betterments.

The judgment appealed from is accordingly reversed with directions to proceed accordingly.

Reversed.

THOMAS, C. J., CHAPMAN, J., and PARKS, Associate Justice, concur.