## KENNON v. CRENSHAW
79-498
Circuit Court, Gadsden County
April 1, 1980

George Clark, III, for plaintiff.

W.K. Lally, for defendant Crenshaw.

Jack A. Harnett, for defendant Hanna.

Alexander L. Hinson, for defendant Summerford.

BEN C. WILLIS, Circuit Judge.

_____

### 1.

The plaintiffs seek the cancellation of a certain tax deed issued to defendant A. M. Crenshaw dated July 11, 1979, purporting to convey real property which is properly described as:

> Commence at the center of Section 17, Township 3 North, Range 3 West, and run West 417 feet, thence continue West 1050 feet, thence North 132 feet, thence West 150 feet, thence South 132 feet, and thence East 150 feet to the point of beginning.

### 2.

Also made parties defendant are Wayne Hanna, as Clerk of Courts for Gadsden County, and William A. Summerford, as Tax Collector for Gadsden County.

### 3.

A number of points have been raised, but the real issue is whether or not, under the circumstances, the acquisition of this property for a total consideration of $102.31 paid out by defendant Crenshaw for the tax deed is so grossly inadequate as to render the transaction unconscionable for which a court of equity will grant relief.

### 4.

The property involved was vested in the plaintiff, Feddo Kenon, by a warranty deed dated October 10, 1951, from Jennie Belle Monk and Henry Monk, recorded October 12, 1951, at Deed Book 96 at Page 314 of the public records of Gadsden County. There is located on the property a one-story, five-room dwelling house on a cement block foundation with wood shingle exterior walls, composition shingle roof, with a porch. It has gas heating by a space heater, plumbing facilities and septic tank sewer disposal. It was built about 1961 and serves, as it has for a number of years, as the dwelling of Feddo Kenon and his wife, Hattie Mae. It was claimed as homestead, and was apparently wholly exempt, prior to the year 1973, from ad valorem taxes. It is not clear from the evidence whether taxes were levied for the years 1973 and

1974, but, if so, they were evidently paid, as no tax certificates were issued for those years. The property is shown to have a value of $7500.

5.

For the year 1975, the property was assessed at a value of $5200, of which, because of homestead exemption of $5000, only a $200 value was taxable. The taxes assessed for that year totaled $3.05. These taxes were not paid when due, and, pursuant to applicable procedures which appear to have been followed, the Tax Collector issued Tax Sale Certificate No. 114 on June 1, 1976. The certificate recites the sum of $7.65 as being the "amount due for taxes, interest, costs and charges" on the described property. The certificate was purchased by John G. Barrow, as attorney-in-fact for A. M. Crenshaw, on the same date, June 1, 1976. On April 18, 1979, the defendant Crenshaw gave notice to the Tax Collector that Tax Certificate No. 114 of 1976 is surrendered and application is made for a tax deed on the property covered by such certificate, being the land involved in this lawsuit. The application was in proper form, and applicant agreed to pay all delinquent taxes, redeem all tax certificates not in applicant's possession, pay omitted taxes and interest earned on unpaid taxes, and also to pay all fees and costs incurred. On May 22, 1979, the Tax Collector transmitted to the Clerk of the Circuit Court the application for tax deed; the Collector's certification of the issuance of the tax certificate for the land covered; description of certificate owned by applicant together with the sums paid, namely, a total of $57.88 and a tax, title and lien search by an abstractor. The covering letter listed a lien holder, James Talcott, Inc., but no address was given; and also listed Feddo Kenon, Route 2, Box 122-H, Quincy, Florida 32351, as the last owner of record. On May 24, 1979, the Clerk gave notice of the application for tax deed, setting forth the name of the applicant, the number and year of the certificate, a description of the property, and the name of Feddo Kenon as the name in which the property was assessed. The notice stated that: "Unless such certificate shall be redeemed according to law, the property described in such certificate shall be sold to the highest bidder at the courthouse door on the 11th day of July, 1979, at 11:00 A.M." This notice was published at weekly intervals four times in June 1979 in the *Twin City News,* a weekly newspaper of general circulation published in the Town of Chattahoochee, Gadsden County, Florida. A copy was also mailed to Feddo Kenon on June 12, 1979, at Route 2, Box 122-H, Quincy, Florida 32351, by certified mail; and a return receipt, signed by Feddo Kenon, was returned to the Clerk. Such receipt recites a delivery on June 24, 1979. A sale was conducted in accordance with the notice, and the property was struck off to A. M. Crenshaw for a total sum of $102.31; and on the same date a tax deed was issued to A. M. Crenshaw,

recorded the same date at O. R. Book 260, Page 680, in the public records of Gadsden County.

### 6.

Feddo Kenon is an elderly black man of little education who appears to be either mildly mentally retarded or senile to some extent. He has some marked physical weakness, though he seems to have performed to some degree of satisfaction as a mechanic. He relied upon an adult son, Jesse Kenon, to attend to his tax business. It appears that Feddo owns perhaps two or three parcels of land which are taxable. As has been noted, the taxes for 1975 on the home property were not paid. There is some plausible suggestion that he was under the impression that his home place was completely exempt and that any tax notice may have been thought by him to refer to other property. At any rate, the taxes for 1976, 1977 and 1978 were paid. Feddo provided his son Jesse with the money to make the payments. The 1976 taxes were paid March 21, 1977, in the amount of $3.06; the 1977 taxes of $2.96 were paid November 16, 1977; and the 1978 taxes of $2.97 were paid November 9, 1978. The tax notices for 1976 and 1977 contained, below the description of the land, the following words: "Cert.#114 of 1976." This does not appear on the 1978 statement.

### 7.

At this point, it is to be observed that Section 197.018, Florida Statutes, which was in force from 1974 until its repeal by Chapter 79-584, Laws of Florida, effective December 18, 1979, required the Tax Collector to:

> "Mail to each taxpayer, at the address shown on the latest tax roll, a notice stating that there is a tax certificate against a parcel of real property taxable to him. The notice shall be given by first class mail annually with or prior to mailing of the current tax notices."

### 8.

The reference to "Cert #114 of 1976" was utilized by the Tax Collector to comply with Section 197.018. This means of complying with the statute may be appropriate and adequate. However, the words, "Cert #114 of 1976", may well not be comprehended by one without expertise in tax terminology as calling attention to previously unpaid taxes for which a tax certificate, with the potentiality of loss of land by tax deed, is outstanding.

## 9.

It appears that the Tax Collector and Clerk of the Circuit Court have substantially followed the prescribed procedures set forth in Chapter 197, Florida Statutes, in the issuance of the tax certificate, the processing of the application for tax deed, the giving of required notices, and the ultimate issuance and delivery of the tax deed to defendant Crenshaw. The plaintiffs argue that there is an inadequate compliance with Section 197.018, and also that payment of taxes in 1976, 1977 and 1978 should have been applied to redeeming the 1976 tax certificate. It does not appear that there is a clear duty that a tender of payment of a tax bill for a particular year requires the Tax Collector to apply a tendered payment to an outstanding tax certificate. However, an expectation that all unpaid taxes are included when one seeks to pay a tax bill is an equitable circumstance to be considered. Likewise, failure to perceive on a computerized print-out tax statement containing much highly technical data that "Cert #114 of 1976" refers to an outstanding tax certificate is also a circumstance in determining the equities of the transactions involved.

## 10.

It is clear that the tax statutes dealing with the assessment and collection of taxes on real estate, including provisions and procedures for subjecting the property itself to collection of taxes to the extent of divesting the owner of title by issuance of a tax deed to another, are to be given full effect. In Section 197.056, a first lien, superior to all other liens, is imposed on January 1 of each year on any land on which taxes are levied. This section further states that no act of omission or commission of the public officials involved in the tax process "shall operate to defeat payment of taxes." It also states:

"All owners of property shall be held to know that taxes are due and payable annually and are charged with the duty of ascertaining the amount of current and delinquent taxes and paying them before April 1 of the year following the year in which taxes are assessed. No sale or conveyance of real . . . property for nonpayment of taxes shall be invalid except upon proof that:

(a) The property was not subject to taxation;

or . . .

(c) The real property had been redeemed before the execution and delivery of a deed based upon a certificate issued for nonpayment of taxes . . . ."

However, it is also fundamental that forfeitures are to be strictly construed and are not favored in the law unless clearly and lawfully incurred. The need for effective and dependable means of collecting taxes and protecting the integrity of tax sales and deeds is obvious, but it is also subject to equitable considerations.

## 11.

The defendant Crenshaw was represented in all matters by John G. Barrow, who is described as attorney-in-fact. Crenshaw is somewhat mysterious, as Barrow has a reluctance to identify this person. However, it appears quite clear that it is Mr. Barrow who is the acting party in acquiring the tax deed involved, and it is immaterial who or where is Crenshaw. Mr. Barrow is fully responsive to representing here the interest of the tax deed holder. It does not appear that Barrow has engaged in any active fraud, misrepresentation or other deception of the Kenons or anyone else. He seems to be an investor in tax certificates and tax deeds, and this transaction is one of several of his in Gadsden County. However, he was fully on notice of the homestead character of this property, its assessed value, and the occupation by the Kenons of the dwelling thereon. He has not expended any monies in improving the property, nor has he acted in any other way to use it other than to seek to obtain possession of it. He does, by his counterclaim, seek to obtain possession of the property in accordance with Section 197.311, Florida Statutes. This section provides for a summary proceeding to obtain a writ of assistance. To such an application for a writ, responsive pleadings may be served, and the statute directs that, thereupon, "the matter shall proceed as in chancery cases." Thus, the statute contemplates equitable considerations.

## 12.

This brings the case to a full consideration of the powers and limitations upon a court of equity to grant relief to the record owner of the property involved as against the holder of the tax deed which purports to convey that property. It seems established that the tax statutes involved do not preclude the raising and invoking of equitable principles in behalf of an owner in possession of lands on which a tax deed has issued to defeat the claims of the tax deed holder. Such was the holding in *Whittington v. Davis,* 159 Fla. 409, 32 So.2d 158 (1947). There, it was observed that statutes making tax titles invulnerable to attack except on stated grounds did not prevent persons in possession, believing themselves to be owners, from defeating the execution of a possessory writ by establishing a good defense in equity.

### 13.

It is a general rule that mere inadequacy of price, standing alone, will not suffice to upset a judicial sale, unless coupled with other circumstances having a tendency to cause such inadequacy. *Maule Industries v. Seminole Rock and Sand Co.* (Fla. 1957), 91 So.2d 307. Inadequacy of price, in isolation, will not move a court of equity to disturb a judicial sale, but "where there is an inadequacy of price which the court finds is such as to shock the judicial conscience and it is coupled with or shown to have resulted from mistake, accident, surprise, misconduct, fraud or irregularity, the sale will generally be set aside." *Subsaro v. Van Heusden* (Fla. 3rd DCA 1966), 191 So.2d 569. See also *Arlt v. Buchanan* (Fla. 1966), 190 So.2d 575, which observes that relief against a judicial sale may be granted, though fraud is not clearly, positively and unequivocally alleged and proven, where inadequacy of price is gross and is shown to result from any mistake, accident, surprise, fraud, misconduct or irregularity upon the part of either the purchaser or other person connected with the sale, with resulting injustice to the complaining party.

As mere inadequacy of consideration is not sufficient to interpose a court of equity, neither does mere hardship. *Henderson v. Leatherman,* 120 Fla. 496, 163 So. 310 (1935); especially self-created hardship, *Friedland v. Hollywood* (Fla. 2nd DCA 1961), 130 So.2d 306; *Hill v. Lummus* (Fla. 3rd DCA 1960), 123 So.2d 365. Other equitable principles are also applicable, such as he who seeks equity must do equity and must come into equity with clean hands, and there must be an absence of an adequate remedy at law to activate a court of equity.

### 15.

The applicable rule in this case seems to be that set forth in 12 C.J.S. at page 970 [Cancellation of Instruments, Section 23(a)]:

> "Where the inadequacy of consideration is accompanied by inequitable incidents which show bad faith, such as concealment, misrepresentation, and undue advantage on the part of one obtaining the benefit, or ignorance, weakness of mind, incapacity, or pecuniary necessity and the like on the part of the other, these circumstances combined with the inadequacy of price will much more readily induce a court to decree a rescission."

### 16.

The defendant Crenshaw has argued that Feddo Kenon does not come into equity with clean hands, as he had a purpose of trying to acquire some property from a brother; Feddo believing that if he paid taxes on his brother's property he could obtain ownership. The evidence

does not support this contention. There was some rather vague and incoherent testimony by Feddo about taxes on some property other than the home place, but no conscious plan to defraud anyone of property is deductible from the evidence. With regard to any reference to a remedy at law, it is very obvious that Feddo Kenon has no remedy of any kind except such as a court of equity may provide.

### 17.

The Court deems that the sum of $102.31 for real estate worth $7500 is so grossly inadequate as to shock the conscience of the Court. Also, the circumstances of the property being occupied as the home of the Kenons and the general regularity of paying tax assessments (with only the year 1975 being overlooked) reveals a purpose to pay and not to be indifferent. The lack of education and knowledge of tax terminology or abbreviation are circumstances proper to be considered. The failure to respond to the various notices, all of which are in highly technical form, is not such neglect as to bar him from relief. The policy of the law, as set forth in Section 197.018, that there be an annual notice to the taxpayer by first class mail of the existence of an outstanding tax certificate against the parcel does contemplate that the fact be brought effectively to the taxpayer's notice. Though the vagueness of the notice of the tax certificate on two of the tax bills and the absence of any notice on the other bill may be regarded as insufficient notice under Section 197.018, this alone would not invalidate the tax sale in the light of the provisions of Section 197.056 already mentioned. However, this is a circumstance that equity may notice and accord weight. The Court does not find that defendant Crenshaw or the agent Barrow actively practiced any fraud, deception, misrepresentation or concealment. Their interest was solely to make an advantageous investment and to acquire the ownership of the property involved. However, to acquire the family home and premises of an elderly man of physical weakness and mental inadequacies for $102.31 and thus obtain ownership of a property worth $7500 is an enrichment that should not stand in the face of the hardships to be visited upon the Kenons. To set aside and rescind the tax deed and to order reimbursement to Crenshaw of the sums paid out will result only in the loss by Crenshaw and Barrow of their bargain, which, as noted, is an enrichment to the detriment of the Kenons which a court of conscience may not sanction. Therefore, it is found that the equities are with Feddo Kenon and against defendant Crenshaw, and it is

ADJUDGED:

### 1.

The tax deed dated July 11, 1979, issued to A. M. Crenshaw, conveying the property described in Paragraph 1 of this Judgment, and which is recorded in O.R. Book 260 at Page 680 of the public records of Gadsden County, be and the same is rescinded, set aside, cancelled and held for naught; and A. M. Crenshaw and all persons claiming under the said A. M. Crenshaw are forever barred of any claim, title, estate or interest in the land described in said deed by virtue of said deed;

### 2.

As a condition to nullifying said deed, the plaintiffs, pursuant to Section 197.166, Florida Statutes, shall pay into the registry of this Court the sum of $102.31 plus $1.15 paid for documentary stamps and surtax, together with interest thereon at the rate of 12% per annum from July 11, 1979, and also taxes paid by A. M. Crenshaw for the year 1979, together with interest of 12% per year from the date such taxes were paid. The Court is advised that taxes in the amount of $2.92 were paid November 21, 1979. Also to be paid into the registry are all fees and commissions earned by the Clerk for receiving said sums and disbursing them. The Clerk of this Court is directed, upon receipt of said sums, to disburse to defendant A. M. Crenshaw the sums paid for said tax deed and taxes for 1979, if any, together with 12% annual interest on said sums.

### 3.

The counterclaim of defendant A. M. Crenshaw is denied.

### 4.

The cross-claims of A. M. Crenshaw against the defendants Hanna and Summerford were withdrawn at the trial, and the same are dismissed.

### 5.

Each party shall bear the costs incurred by said party, the Court deeming such to be equitable.

### 6.

Any prayer in behalf of any party for the award of attorney's fees is denied.

7.

Though made parties defendant, no specific relief was sought against Wayne Hanna, as Clerk, and William A. Summerford, as Tax Collector. However, they are directed to comply officially with the adjudications herein made insofar as the duties of their offices may require.