490 So.2d 998 (1986)
HIALEAH, INC., a Florida Corporation, Appellant,
v.
DADE COUNTY, a Political Subdivision of the State of Florida, Franklin B. Bystrom, As Property Appraiser of Dade County, and Steven L. Smith, As Tax Collector of Dade County, Appellees.
No. 85-1412.
District Court of Appeal of Florida, Third District.
June 17, 1986.
Steel, Hector & Davis and Gerry S. Gibson, Miami, for appellant.
Robert A. Ginsburg, County Atty., and Daniel A. Weiss, Asst. County Atty., for appellees.
Before SCHWARTZ, Chief Judge, and HENDRY and BASKIN, JJ.
HENDRY, Judge.
This is an appeal brought by plaintiff Hialeah, Inc. from a final judgment entered in favor of defendant Dade County upholding the assessment of ad valorem real property taxes upon the land portion of the Hialeah Park Race Track for the years 1980 through 1983.
The relevant facts may be briefly stated. On February 1, 1978, Hialeah, Inc. entered into a thirty year lease of the land portion of the Hialeah Park Race Track with the City of Hialeah. Hialeah, Inc. is required to use the property to conduct thoroughbred horse racing and if such racing is discontinued, Hialeah, Inc.'s leasehold is terminated. Hialeah, Inc. has the option to purchase the city's fee simple interest in the property upon its satisfaction of the city's $9 million mortgage debt and upon the further payment of $100. The property's fair market value exceeds $11.4 million.
The lease was part of a sale-leaseback transaction in which the city purchased the land for $9 million from Hialeah, Inc. and then leased it back to Hialeah, Inc. The city obtained funds for this purchase through the issuance of municipal revenue notes which were secured by a purchase money mortgage held by two banks. The lease payments due from Hialeah, Inc. are equivalent to the principal and interest which the city owes on its mortgage loans *999 from the banks. Hialeah, Inc. pays the banks directly and makes no payments to the City of Hialeah. Hialeah, Inc. is obligated to pay all taxes, insurance and expenses relative to the subject property. The city makes no payments whatsoever. Hialeah, Inc.'s obligation is absolute. It is required to make lease payments even if it is evicted from the property, if the leased premises are destroyed, or if the property is taken by eminent domain. The city is not permitted to convey title to the property except subject to the lease. Any condemnation award must first be used to repay any outstanding debt; any excess then goes to Hialeah, Inc.
In 1980, amendments to chapters 199 and 196, Florida Statutes, were made providing that all leasehold or other possessory interests in real property owned by a government were to be taxed only as intangible personal property. § 199.023(1)(f), Fla. Stat. (1983);[1] § 196.199(2)(b), Fla. Stat. (1983).[2] Consequently, such interests were not subject to taxation as real property. See § 196.199(2)(b), Fla. Stat. (1983).
Dade County assessed real property taxes upon Hialeah, Inc.'s leasehold in the property for the years 1980, 1981, 1982 and 1983. Hialeah, Inc. paid the taxes under protest and filed petitions for cancellation with the Property Appraisal Adjustment Board. The Board denied Hialeah, Inc.'s petitions. Hialeah, Inc. filed suit against Dade County seeking cancellation of the assessments of real property taxes, the refund of the taxes paid and a judicial declaration that its leasehold was subject to taxation only as intangible personal property. After a non-jury trial, the trial court entered a final judgment in favor of Dade County.
The issue on appeal is whether the property leased by Hialeah, Inc. from the City of Hialeah is government owned within the meaning of section 199.023(1)(f), Florida Statutes (1983),[3] thereby rendering it subject to only intangible personal property taxation.
Hialeah, Inc. contends that a property is considered government owned unless a taxpayer holds the attributes of ownership specified in section 196.199(7), Florida *1000 Statutes (1983).[4] We are unpersuaded by this argument. Section 196.199(7) merely establishes two exceptions to the general rule that leaseholds or other possessory interests in government owned property are subject to intangible personal property taxation. The exceptions arise only after it is determined that section 199.023(1)(f) is applicable. The exceptions set forth in section 196.199(7) do not guide this court's determination as to whether section 199.023(1)(f) applies in the first place, i.e., is the property government owned?
In determining whether government ownership exists, we note that the statute does not provide any definition for the term "owned" or the phrase "government owned." 42 Florida Jurisprudence Second, Property § 13 (1983) states:
The meaning of the term "owner" is varied and depends in a great measure on the manner of its use. In common speech, it is most often used to designate the person in whom the legal or equitable title of property rests, as distinguished from a mere occupant or tenant. Ownership of property implies the right of possession and control thereof, as well as the right to dispose of, alienate, or transfer the property rights freely and without interference or restraint.
The term "owner" in Florida has not always been limited in meaning to a legal title holder. In Mikos v. King's Gate Club, Inc., 426 So.2d 74 (Fla. 2d DCA 1983), the court found that where members of a mobile home park corporation held equitable title to land upon which their mobile homes were affixed, the members' interests in such sites constituted "ownership" rendering their mobile homes taxable as real property. In Roberts v. First Federal Savings & Loan Association of Manatee County, 222 So.2d 32 (Fla. 2d DCA 1969), the court held that a vendee under a land contract was an "owner" against whom a statutory lien could be asserted. The court in Pensacola Scrap Processors, Inc. v. State Road Department, 188 So.2d 38 (Fla. 1st DCA), cert. denied, 192 So.2d 494 (Fla. 1966), ruled that a tenant at will was an "owner" of property so as to be entitled to compensation in an eminent domain proceeding.
The phrase "government owned" has also not been limited in meaning to a legal title holder. In Bancroft Investment Corp. v. City of Jacksonville, 157 Fla. 546, 27 So.2d 162 (1946), the court held that a taxpayer holding equitable title to property pursuant to an executory contract was the owner for taxing purposes, despite the federal government's holding of the legal title to the land as security. The court cited S.R.A., Inc. v. Minnesota, 327 U.S. 558, 66 S.Ct. 749, 90 L.Ed. 851 (1946), as controlling. In S.R.A., the Supreme Court considered whether the State of Minnesota had the power to tax property located within the state when legal title rested in the United States government but equitable title rested with a taxpayer under an executory contract for purchase. The Court concluded that the state had the power to tax the beneficial owner as the United States held legal title only as security. The federal government was in the position of the mortgagee. See Mikos v. King's Gate Club, Inc., 426 So.2d at 76.
Although Bancroft was decided long before the passage of the amendments to chapters 199 and 196 establishing that leasehold or other possessory interests in government owned property are subject to only intangible personal property taxation, its determination of the meaning of government ownership is controlling in the instant case. Bancroft establishes that property is not government owned under applicable taxing statutes where the government merely holds legal title as security and a taxpayer is the beneficial owner in equity. *1001 Applying this interpretation of government ownership to the case at bar, we find, as did the trial court, that the subject property is not government owned because the city holds legal title to the property merely as security. We further find that Hialeah, Inc. is the true and equitable owner.
The basis for these findings is as follows. Under section 697.01, Florida Statutes (1985), an instrument must be construed as a mortgage if, when taken alone or in conjunction with surrounding facts, it appears to have been given for the purpose of securing the payment of money.[5]Cinque v. Buschlen, 442 So.2d 1034 (Fla. 3d DCA 1983); First Mortgage Corp. of Stuart v. deGive, 177 So.2d 741 (Fla. 2d DCA 1965). We think it clear that the instant agreement was made for the purpose of securing money and therefore must be deemed a mortgage. The city merely holds legal title to the property as security. All of the other burdens and obligations of ownership rest with Hialeah, Inc. Even if the leased premises are destroyed, the property is taken by eminent domain or Hialeah, Inc. is evicted from the property, Hialeah, Inc. is still obligated to make payments until the outstanding debt is paid. Upon Hialeah, Inc.'s payment of the outstanding debt, it can acquire the property, which has a fair market value of more than $11.4 million, for the nominal consideration of $100. Hialeah, Inc. is the equitable owner of the property.
Since we find the city is holding title to the property merely as security and Hialeah, Inc. is the beneficial owner of the property,[6] we hold the property is not government owned and, accordingly, not within the ambit of section 199.023(1)(f), Florida Statutes. Therefore, we uphold the assessment of real property taxes upon the land portion of Hialeah Park Race Track for 1980, 1981, 1982 and 1983.
For the foregoing reasons and based upon the authorities cited, the final judgment appealed is affirmed.
Affirmed.
NOTES
[1] Definitions. 
(1) "Intangible personal property" means all personal property which is not in itself intrinsically valuable, but which derives its chief value from that which it represents, including, but not limited to, the following:
* * * * * *
(f) Excepting any such leasehold estate or possessory interest subject to classification pursuant to s. 4(a), Art. VII of the State Constitution, all leasehold estates, or any possessory interests created thereby, in property of the United States, of the state or any of its political subdivisions, or of municipalities, agencies, authorities, and other public bodies corporate of the state, which leasehold estates or possessory interests are undeveloped or predominantly used for residential or commercial purposes and upon which rental payments are due in consideration of such leasehold estates or possessory interests; except that leasehold estates or possessory interests described by s. 196.199(7) shall not be included herein.
[2] Exemptions for property owned by governmental units. 
* * * * * *
(2) Property owned by the following governmental units, but used by nongovernmental lessees, shall only be exempt from taxation under the following conditions:
* * * * * *
(b) Except as provided in paragraph (c), the exemption provided by this subsection shall not apply to those portions of a leasehold estate defined by s. 199.023(1)(f), subject to the provisions of subsection (7). Such leasehold estate shall be taxed only as intangible personal property pursuant to chapter 199 if rental payments are due in consideration of such leasehold estate. If no rental payments are due pursuant to the agreement creating such leasehold estate, the leasehold estate shall be taxed as real property. Nothing in this paragraph shall be deemed to exempt personal property, buildings, or other real property improvements owned by the lessee from ad valorem taxation.
[3] We note that while the statute does not specifically state the phrase, "government owned," it does say "property of the United States, of the state or any of its political subdivisions, or of municipalities, agencies, authorities, and other public bodies corporate of the state." Since this description is synonymous with "government owned," we use the term "government ownership" or "government owned" herein for purposes of clarity.
[4] Exemptions for property owned by governmental units. 
* * * * * *
(7) Property which is originally leased for 100 years or more, exclusive of renewal options, or property which is financed, acquired, or maintained utilizing in whole or in part funds acquired through the issuance of bonds pursuant to parts II, III and V of chapter 159, shall be deemed to be owned for purposes of this section.
[5] Instruments Deemed Mortgages. 
(1) All conveyances, obligations conditioned or defeasible, bills of sale or other instruments of writing conveying or selling property, either real or personal, for the purpose or with the intention of securing the payment of money, whether such instrument be from the debtor to the creditor or from the debtor to some third person in trust for the creditor, shall be deemed and held mortgages... . [Emphasis supplied.]
[6] Hialeah, Inc. contends the Florida Supreme Court has twice rejected the rule that a lessee with an option to purchase holds beneficial title in equity. Gautier v. Lapof, 91 So.2d 324 (Fla. 1956); Foxworth v. Maddox, 103 Fla. 32, 137 So. 161 (1931). Gautier and Foxworth are distinguishable from the instant case. In those cases no question was raised and no finding made that the substance of the transaction was in fact a mortgage. In the case at bar, we expressly find that the substance of the transaction was in fact a mortgage. In analyzing whether tax liability exists we are authorized to look through form, to fact and substance. Bancroft Inv. Corp. v. Jacksonville, 27 So.2d at 171.