# Supreme Court of Florida

_____

No. SC11-1445
_____

**LEONARD J. ACCARDO, et al.,**
Petitioners,

vs.

**GREGORY S. BROWN, etc., et al.,**
Respondents.

[March 20, 2014]

CANADY, J.

In this case, we consider whether the land and improvements on certain leaseholds in Navarre Beach on Santa Rosa Island that were created under long-term leases granted by Santa Rosa County, are subject to the intangible personal property tax rather than the ad valorem real property tax.[1]

---

1. We also decide a related case concerning the taxation of improvements on certain leaseholds in Pensacola Beach on Santa Rosa Island in Escambia County. See 1108 Ariola, LLC v. Jones, No. SC11-2231 (Fla. Mar. 20, 2014).

In Accardo v. Brown, 63 So. 3d 798 (Fla. 1st DCA 2011), the First District Court rejected the claim of the petitioner taxpayers that they were entitled to the benefit of a statutory provision found in section 196.199(2)(b), Florida Statutes (2006), under which certain leasehold or other possessory interests in real property owned by a political subdivision of the State are exempt from ad valorem taxation and subject only to taxation as intangible personal property. The First District concluded that given the nature of their perpetual leasehold interests, the taxpayers are the equitable owners of the real property and the improvements thereon and that the statutory provision relied on by the taxpayers is therefore inapplicable. Accardo, 63 So. 3d at 801-02. The District Court certified the following question as one of great public importance:

> WHETHER SECTION 196.199(2)(b), FLORIDA STATUTES, IS INAPPLICABLE TO THE REAL PROPERTY AT ISSUE BECAUSE APPELLANTS ARE THE EQUITABLE OWNERS OF THAT PROPERTY?

Id. at 802.

We determined to exercise our discretionary jurisdiction under article V, section (b)(4), Florida Constitution. For the reasons we explain, we answer the certified question in the affirmative and approve the decision reached by the First District.

## I. THE LEASEHOLDS IN NAVARRE BEACH

The properties at issue in this case—consisting largely of residential condominiums with some single-family residential units and commercial properties—are located on the portion of Santa Rosa Island known as Navarre Beach, on lands conveyed to Escambia County by the United States in 1947. The deed permitted Escambia County to lease the land for purposes it deemed to be in the public interest but provided that the land was "never to be otherwise disposed of or conveyed" by Escambia County. These Navarre Beach lands were leased in 1956 by Escambia County to Santa Rosa County under a lease providing for an initial term of ninety-nine years, "automatically" renewable for a further term of ninety-nine years "on the like covenants, provisions and conditions," "including the right in lessee for further renewals." Santa Rosa County subsequently entered into various subleases with private parties for the development of the Navarre Beach lands.

The subleases granted by Santa Rosa County—tracking the renewal provisions of the lease by Escambia County to Santa Rosa County—generally provide for an initial ninety-nine-year term and renewal for a further term of ninety-nine years on like terms "including an option for further renewals." The subleases provide for the payment of rentals and include no option to purchase. The subleases provide that title to any buildings or improvements on the land vests in the lessor upon the termination of the lease and prohibit the sublessee from

- 3 -

removing any such improvements.  The order of the trial court granting summary

judgment to the respondents describes the undisputed features of the interests of

the taxpayers arising under the subleases granted by Santa Rosa County:

> All of the [taxpayers'] interests at issue in this action are used for purely private purposes.  The [taxpayers] enjoy the capital appreciation and rental income derived from these interests.  The [taxpayers] have the right to convey their interests without restraint; they have the right to encumber their properties with mortgages; they bear all of the risks of ownership; they bear the responsibility for insurance, maintenance and repair; and they are typically responsible by the terms of the lease documents for taxes imposed upon their interests.

## II.  THE STATUTORY FRAMEWORK

As provided in section 196.199(1), Florida Statutes (2013), property owned

by governmental units is not generally subject to the ad valorem tax.  But

government property leased to private parties may be subject to ad valorem

taxation.  Section 196.199(2) provides generally that where government owned

property is "used by nongovernmental lessees," the leasehold interest in the

government property shall be exempt from ad valorem taxation only when the

lessee serves or performs the governmental, municipal, or public purpose or

function as specifically defined by law.  This rule regarding the taxation of private

leasehold interests in governmental property is qualified by section 196.199(2)(b),

which is specifically referenced in the certified question and is central to the

petitioners' argument.

Section 196.199(2) provides in pertinent part:

> (2) Property owned by the following governmental units but used by nongovernmental lessees shall only be exempt from taxation under the following conditions:
>
> . . . .
>
> (b) Except as provided in paragraph (c), the exemption provided by this subsection shall not apply to those portions of a leasehold or other interest defined by s. 199.023(1)(d), Florida Statutes 2005, subject to the provisions of subsection (7).  Such leasehold or other interest shall be taxed only as intangible personal property pursuant to chapter 199, Florida Statutes 2005, if rental payments are due in consideration of such leasehold or other interest.  All applicable collection, administration, and enforcement provisions of chapter 199, Florida Statutes 2005, shall apply to taxation of such leaseholds.  If no rental payments are due pursuant to the agreement creating such leasehold or other interest, the leasehold or other interest shall be taxed as real property.  Nothing in this paragraph shall be deemed to exempt personal property, buildings, or other real property improvements owned by the lessee from ad valorem taxation.
>
> (c) Any governmental property leased to an organization which uses the property exclusively for literary, scientific, religious, or charitable purposes shall be exempt from taxation.

Section 196.199(7) provides that "[p]roperty which is originally leased for 100 years or more, exclusive of renewal options, or property which is financed, acquired, or maintained utilizing in whole or in part funds acquired through the issuance of [certain governmental bonds], shall be deemed to be owned for purposes of this section."

The central provision of section 196.199(2)(b) is tied to section 199.023(1)(d), Florida Statutes (2005), which defines intangible personal property as including, subject to an exception not relevant here, "all leasehold or other

- 5 -

possessory interests in real property owned by [governmental entities], which are undeveloped or predominantly used for residential or commercial purposes and upon which rental payments are due." (Emphasis added.)

The provisions in section 196.199(2)(b) were first adopted in 1980 and have not been materially altered since then. Compare § 196.199(2)(b), Fla. Stat. (2013), with § 196.199(2)(b), Fla. Stat. (1980).

## III. THE TAXPAYERS' ARGUMENTS

The petitioners argue that because their leaseholds all are on county property that is either undeveloped or used for residential or commercial purposes, rental payments are due under their leases and their initial lease terms are for less than 100 years, under the plain terms of section 196.199(2)(b), the leasehold interests are taxable only as intangible personal property. They contend that the statute precludes ad valorem taxation "if a leaseholder is declared to have an 'other interest,' such as 'equitable ownership,' if the lessee is not an actual owner of the property under Florida law." Petitioners' Revised Initial Brief on the Merits at 10. The petitioners further argue that in any event, they are not equitable owners. According to the petitioners, there can be no equitable ownership absent the right to acquire legal title. They contend that "[i]f there were ownership, there would be no payment of rent, the leaseholders would have no obligation to construct, insure, or replace the property, and they would be free to move the improvements to

another location."  Petitioners' Revised Initial Brief on the Merits at 24.  They further argue that subjecting their renewable ninety-nine-year leases to ad valorem taxation is inconsistent with the provision of section 196.199(7) regarding the taxation of "[p]roperty which is originally leased for 100 years or more, exclusive of renewal options."  The petitioners make some additional arguments that we have determined do not merit discussion.[2]

## IV.  EQUITABLE OWNERSHIP AND AD VALOREM TAXATION

"The concept of equitable ownership in ad valorem taxation has long been a part of Florida law."  Leon Cnty. Educ. Facilities Auth. v. Hartsfield, 698 So. 2d 526, 528 (Fla. 1997).  In Bancroft Investment Corp. v. City of Jacksonville, 27 So. 2d 162, 170-71 (Fla. 1946), we held that the vendee in possession under a contract for deed from the United States—where the United States retained legal title as security—was "the owner of the taxable interest in the property in question, that the United States ha[d] abandoned such use of it as gave it an exemption status" and that the property therefore was subject to ad valorem taxation.  We recognized that our prior decisions had "held that the one who holds the equitable interest is the owner for taxing purposes."  Id. at 171 (citing Porter v. Carroll, 92 So. 809 (Fla. 1922) (stating that owner of property for ad valorem tax purposes was not the

_____

2. The petitioner taxpayers point out that some of the subleases are not perpetually renewable, but they do not make an argument that is specific to those leases.

person who "held the legal title only" but was instead the contract vendee who held "the equitable interest which is the substantial interest"); Dean v. State, 77 So. 107, 109-110 (Fla. 1917) (holding that persons who were "vendee[s] in possession" of property had "an equitable freehold estate in the land" and thus were properly allowed to vote as freeholders—that is, ad valorem taxpayers—in election regarding issuance of bonds)). Following our decision in Bancroft, the district courts have repeatedly applied the equitable ownership doctrine in the ad valorem taxation context.

In Mikos v. King's Gate Club, Inc., 426 So. 2d 74, 75-76 (Fla. 2d DCA 1983), the Second District Court held that mobile home tenants who did not have legal title to the lots on which their mobile homes were located should nevertheless be deemed equitable owners of the lots for ad valorem tax purposes. Fee simple ownership of the mobile home park real property was vested in a nonprofit corporation, which was prohibited from selling or leasing any lot or site in the park. Id. at 74-75. The mobile home park had 331 lots. Id. at 75. The corporation had a corresponding number of authorized memberships. Id. The certificates issued to each of the members entitled the member to locate a mobile home at a site designated by the corporate directors, provided for the payment of a monthly maintenance fee, were transferable by sale with the corporation having the right of first refusal, and stated that the certificate holder did not own any interest in the

land.  Id.  The district court thus recognized that "no member owns legal title to the site upon which his mobile home is situated."  Id.  The court nonetheless concluded that the mobile home owners held equitable title to their respective lots by virtue of the interest conferred on them as members of the nonprofit corporation.  Id. at 76.  In reaching this result, the court relied on the provisions regarding homestead exemption in article VII, section 6(a), Florida Constitution, which provides that the homestead exemption is applicable to real estate that is held by "equitable title."  Id.  The Second District reasoned that if the mobile home owners "are qualified to obtain homestead exemption on these sites, it follows that their interest in the respective sites is one of ownership."  Id.  The court further observed that "[t]o permit the members of the [mobile home park corporation] to avoid the payment of real estate taxes because they maintain their interest in the mobile home sites through the vehicle of a nonprofit corporation would unfairly place a disproportionate burden on other taxpayers of the county."  Id.  Because "[e]ach member has practical dominion over his designated site which is essentially equivalent to ownership," the Second District held that each member's interest was subject to ad valorem taxation.  Id.

In Hialeah, Inc. v. Dade County, 490 So. 2d 998, 999-1000 (Fla. 3d DCA 1986), the Third District Court specifically considered application of the version of section 196.199(2) then in force, along with the corresponding definition of

- 9 -

intangible personal property contained in section 199.023. The circumstances considered by the court involved a sale-leaseback transaction in which the City of Hialeah purchased the land portion of the Hialeah Park Race Track from Hialeah, Inc., and then leased it back to Hialeah, Inc., for a thirty-year term, with lease payments due from Hialeah, Inc., in an aggregate amount equivalent to the principal and interest due on municipal revenue notes secured by a purchase money mortgage for the funds the city borrowed to finance the purchase. Id. at 998-99. Upon the payment of the full outstanding indebtedness with an additional $100 payment, Hialeah, Inc., had the option to purchase the city's fee simple interest in the property. Id. at 998. The Third District rejected the argument of Hialeah, Inc., that its interest in the land was subject only to the intangible personal property tax. Id. at 999-1000.

Rejecting the claim that only leasehold interests falling within the scope of section 196.199(7)—relating to properties originally leased for 100 years or more, exclusive of renewal options, or properties financed by certain governmental bonds —would qualify for ad valorem tax treatment, the court reasoned that the provisions of section 196.199 and section 199.023 concerning taxation as intangible personal property only came into play after a determination that the property was owned by the government. Id. at 1000. In determining whether the property at issue was government owned, the Third District turned to our holding

in Bancroft regarding equitable ownership: "Bancroft establishes that property is not government owned under applicable taxing statutes where the government merely holds legal title as security and a taxpayer is the beneficial owner in equity." Id. at 1000. The court therefore concluded that the Hialeah Park Race Track property was "not government owned because the city holds legal title to the property merely as security" and that Hialeah, Inc., was "the true and equitable owner." Id. at 1001. The property thus was subject to ad valorem taxation. Id.

In First Union National Bank of Florida v. Ford, 636 So. 2d 523, 527 (Fla. 5th DCA 1993), the Fifth District Court resolved a case it described as "the reverse or mirror image of Hialeah, Inc." The case concerned taxation of property that Brevard County used "as its primary governmental and administrative offices." Id. at 523. The county utilized a financing arrangement "whereby individual investors purchased certificates of participation to raise sufficient funds to build" the county governmental center on donated land. Id. at 524. Title to the land was held by the First Union Bank as trustee for the holders of the certificates of participation. Id. The property was leased by the bank to the county for a projected twenty-five-year term, running from year to year and automatically renewable. Id. Rental payments made by the county were used solely to retire the principal and interest on the debt owed to the owners of the certificates of participation. Id. Under the terms of the

lease, once the indebtedness was paid in full, the "Bank must convey legal title to the property in fee to the County." Id.

The Fifth District concluded "that the County has retained sufficient rights and duties regarding the realty and its improvements, to make it the equitable owner." Id. The court focused on the fact that "neither the Bank nor the certificate holders have a right nor prospect of ever occupying or using the land and buildings" and reasoned that "the County holds substantially all the burdens and benefits of ownership relating to the property sought to be taxed." Id. at 524, 527. Accordingly, the Fifth District held that the bank was not liable for ad valorem tax on the property. Id. at 527.

In Leon County Educational Facilities Authority, we considered circumstances similar to those at issue in Ford and reached a result in accord with the result reached by the Fifth District in Ford. The Authority, a governmental entity authorized "to own, lease, and finance higher educational facilities," decided to undertake a dormitory and food service project. Leon Cnty. Educ. Facilities Auth., 698 So. 2d at 527. To accomplish this, a nonprofit corporation was created, and the Authority entered into a lease with an option to purchase agreement with the corporation under which the corporation "as the lessor would acquire, construct, and equip the project and lease it to the Authority in exchange for periodic rental payments." Id. Certificates of participation were issued to obtain

financing for the project under the lease.  Id.  Once the indebtedness owed to the certificate of participation holders was satisfied, the Authority had the right to purchase the project for one dollar.  Id.

After discussing Ford, Bancroft, and Hialeah, Inc., and referring to Mikos, we observed that "[f]airness dictates that the doctrine of equitable ownership should be applied evenhandedly regardless of whether a tax is being imposed or an exemption is being claimed."  Id. at 529.  We rejected the argument that Ford was distinguishable and stated that "[t]he fact that legal title to the project does not automatically pass to the Authority upon the termination of the lease as in Ford is not significant in this instance where the Authority can acquire title by paying the nominal consideration of one dollar."  Id. at 529.  Based on the facts presented, we held that "the project is not subject to ad valorem taxation because the Authority holds virtually all the benefits and burdens of ownership."  Id. at 530.

## V.  WARD v. BROWN

Prior to the case now before us, the taxation of leaseholds at Navarre Beach was dealt with most recently in Ward v. Brown, 919 So. 2d 462, 463 (Fla. 1st DCA 2005), where the First District Court considered whether the taxpayers bringing the challenge were "equitable owners of the property improvements placed on their leaseholds," which derived from the lease granted by Escambia County to Santa Rosa County.  In evaluating this question, the First District stated:

- 13 -

It is undisputed that appellants have the right to renew their own assigned interests in this land lease for the same term of Santa Rosa County's lease term from Escambia County, thereby providing appellants with the same right to perpetual renewals. Appellants have the right to use or rent the improvements, encumber their interests, transfer their property rights, and realize any appreciation in value from sale or rental income. They must ensure and maintain the improvements and are responsible for the payment of any taxes.

Id. (footnote omitted).

Based on these circumstances, the First District concluded that the "appellants are equitable owners" of the improvements and subject to ad valorem taxation. Id. The court relied on case law establishing that the lessee under a perpetual lease is in effect the owner of the property. Id. at 463-64 (citing Thompson v. First Nat'l Bank of Hollywood, 321 So. 2d 466, 468 (Fla. 4th DCA 1975) (relying on definitions of "[p]erpetual lease" as "renewable forever at the lessee's option" and "[a] lease of lands which may last without limitation as to time"); J.W. Perry Co. v. City of Norfolk, 220 U.S. 472, 478-79 (1911) (concluding that leases "for ninety-nine years, renewable forever" were perpetual leases in which the tenants were effectively the owners of the property); Wells v. City of Savannah, 181 U.S. 531, 544 (1901) (concluding that lessees under a perpetual lease had rights in the property resembling ownership rather than those of an ordinary tenant); Wright Runstad Props. Ltd. P'ship v. United States, 40 Fed. Cl. 820, 825 (1998) (stating that "where the lease term is perpetual or will outlast the useful life of the capital improvement for which the special assessment is

- 14 -

levied, the lessee may be responsible for the assessment since he or she is the sole beneficiary of the improvement"); Penick v. Atkinson, 77 S.E. 1055, 1057 (Ga. 1913) (concluding that a perpetual lease is the substantial equivalent of a fee reserving rent)).

The First District specifically rejected the argument that section 196.199(7) "provides a safe harbor from being taxed as equitable owners." Ward, 919 So. 2d at 464. The court stated that "[t]his provision only provides a bright-line test for leases having an initial term of 100 years or more, by deeming them as owned without the need to further address whether there are sufficient rights and duties to consider the lessees as equitable owners." Id. In reaching this conclusion, the court relied on the analysis in Hialeah, Inc. concerning the scope of section 196.199(7). See Ward, 919 So. 2d at 464.

The First District also rejected the appellant taxpayers' argument that because they were "required to maintain and rebuild the improvements, and the improvements [were] required to be conveyed to Santa Rosa County at the termination of the lease[s]" they could not be deemed the equitable owners of the improvements. Id. at 463 n.1. The court found this argument unpersuasive "because there is no end to the lease." Id.

## VI. THE EQUITABLE OWNERSHIP OF THE NAVARRE BEACH PROPERTIES

- 15 -

We conclude that Ward correctly applied the doctrine of equitable ownership in holding that the improvements on the leasehold properties were subject to ad valorem taxation. And we conclude that there is no basis for declining to extend the application of the doctrine of equitable ownership to the underlying land that is subject to the perpetually renewable leases. Under the perpetual leases, the interest of the petitioner taxpayers in the underlying land is not materially different from their interest in the improvements. The taxpayers hold "virtually all the benefits and burdens of ownership" of both the improvements and the land. Leon Cnty. Educ. Facilities Auth., 698 So. 2d at 530.

We reject petitioner taxpayers' argument that an equitable ownership interest is an "other" interest referred to in section 196.199(2)(b) and section 199.023(1)(d) that is subject to taxation only as intangible personal property. This argument ignores the full context of the statutory provisions. First, the argument does not take into account the threshold question of whether the property in question is "real property owned by" a governmental entity. § 199.023(1)(d), Fla. Stat. (2005). Our case law regarding the application of the equitable ownership doctrine makes clear that the person or entity holding equitable title to real property will be deemed the owner of the property for ad valorem tax purposes. See Leon Cnty. Educ. Facilities Auth., 698 So. 2d at 530; Bancroft, 27 So. 2d at 171. The statutory provisions do nothing to alter that preexisting legal rule. Second, the core phrase

in the definitional provision is "all leasehold or other <u>possessory</u> interests." §

199.023(1)(d), Fla. Stat. (2005) (emphasis added). Equitable ownership is not a

mere possessory interest. <u>See, e.g.</u>, <u>Ward</u>, 919 So. 2d at 464; <u>Hialeah, Inc.</u>, 490 So.

2d at 1000-01. Accordingly, the reference to "other" interests in the definitional

provision can have no reference to an equitable ownership interest.

As the First District did in <u>Ward</u>, we also reject the petitioner taxpayers'

argument that equitable ownership can exist under a leasehold only where there is

a right ultimately to acquire legal title. The interest of a lessee under a perpetually

renewable lease is not materially different from the interest of a lessee under a

lease for a term of years providing the right for the lessee to obtain title for

nominal consideration upon the termination of the lease. In both circumstances,

the lessee effectively has the right to exercise perpetual dominion over the

property.

Similarly, we reject the argument that the payment of rent and the other

obligations imposed on the petitioner taxpayers by their leases are sufficient to

establish that the taxpayers are not the owners of the properties for ad valorem tax

purposes. The payment of rent and the bearing of other obligations are typically

incident to leaseholds under which the tenant has equitable ownership, just as the

payment of purchase money and the bearing of other obligations is a part of a

contract for deed under which the vendee will be deemed the equitable owner.

- 17 -

Furthermore, many of the obligations of the petitioner taxpayers here are like the obligations typically imposed on owners under a declaration of condominium or the restrictive covenants in a subdivision. None of the obligations imposed on the petitioner taxpayers are sufficient to defeat the conclusion that they hold "virtually all the benefits and burdens of ownership" of the improvements and the land. Leon Cnty. Educ. Facilities Auth., 698 So. 2d at 530.

Finally, we reject the petitioner taxpayers' argument that subjecting their leasehold interests to ad valorem taxation is inconsistent with the provision of section 196.199(7) regarding the taxation of "property which is originally leased for 100 years or more, exclusive of renewal options." We agree with Ward and Hialeah, Inc. that it must first be determined that the governmental entity is the "owner" of the property—not the mere holder of bare legal title—before there is any reason to consider whether the bright line one-hundred-year rule of section 196.199(7) is applicable. Here, for ad valorem tax purposes, the "owner" of the property is not a governmental entity.

## VII. CONCLUSION

We therefore conclude that the taxpayers are the equitable owners of the real property at issue and that section 196.199(2)(b), Florida Statutes, is inapplicable here. The certified question of great public importance is answered in the affirmative, and the decision of the First District Court is approved.

It is so ordered.

POLSTON, C.J., and PARIENTE, LEWIS, QUINCE, LABARGA, and PERRY, JJ., concur.
NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.


Application for Review of the Decision of the District Court of Appeal - Certified Great Public Importance

First District - Case No. 1D10-4072

(Santa Rosa)

Danny L. Kepner of Shell, Fleming, Davis & Menge, Pensacola, Florida; Talbot D'Alemberte and Patsy Palmer of D'Alemberte & Palmer, PLLC, Tallahassee, Florida,

for Petitioners

J. Elliott Messer and Thomas Marshall Findley of Messer, Caparello & Self, P.A., Tallahassee, Florida; Roy Van Andrews of Lindsay, Andrews & Leonard, Milton, Florida,

for Respondents

Edward Paul Fleming and Randall Todd Harris of McDonald Fleming Moorhead of Pensacola, Florida,

for Amicus Curiae Beach Club Towers Homeowners Association, Inc.

Benjamin K. Phipps, II and Adam Schuyler Brink of Phipps & Howell, Tallahassee, Florida,

for Amicus Curiae Florida Association of Property Tax Professionals