IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

BEACH CLUB TOWERS
HOMEOWNERS
ASSOCIATION, INC.,

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

      Appellant,

CASE NO. 1D15-5886

v.

CHRIS JONES, Property
Appraiser for Escambia County,
Florida; JANET HOLLEY, Tax
Collector for Escambia County,
Florida,

      Appellees.

_____/

Opinion filed October 11, 2017.

An appeal from the Circuit Court for Escambia County.
Edward P. Nickinson, Judge.

Edward P. Fleming and R. Todd Harris of McDonald, Fleming, Moorhead,
Pensacola, for Appellant.

Thomas M. Findley and Robert J. Telfer, III of Messer Caparello, P.A., Tallahassee,
for Appellees.

Loren E. Levy and Jon F. Morris of the Levy Law Firm, Tallahassee, for Amicus
Curiae The Property Appraisers' Association of Florida, Inc., in support of
Appellees.

WINOKUR, J.

Beach Club Towers Homeowners Association, Inc. ("the Association"), as authorized representative of its individual members, appeals the trial court's order granting summary judgment in favor of the Property Appraiser and Tax Collector of Escambia County ("the County"). The Association challenges the trial court's conclusion that the Association's members ("the unit owners") are required to pay ad valorem property taxes on the land underlying Beach Club Towers because they are equitable owners of the land. Because we agree with the Association that the unit owners are not equitable owners of the underlying land, and reject the County's alternate arguments under chapter 718, we reverse.

I.

Santa Rosa Island is a forty-mile barrier island located off the coast of northwest Florida, the western part of which lies in Escambia County. Beach Club Towers is a condominium located on Santa Rosa Island in Escambia County. For purposes of property taxation, the County for a period of time drew a distinction between the land underlying Beach Club Towers and the condominium structures themselves. The County treated the former as exempt from ad valorem property taxes and the latter as taxable. The history behind this distinction has been recounted elsewhere[1] and need not be repeated here.

_____

[1] *State v. Escambia Cty.*, 52 So. 2d 125 (Fla. 1951); *Straughn v. Camp*, 293

It is enough here to state that decades ago the United States conveyed the land making up Santa Rosa Island to Escambia County, on the condition that it forever retain legal title. Since then, Escambia County has leased portions of the land to various entities and individuals, who, in turn, have subleased, and further subleased, the land. Possession of the land underlying Beach Club Towers changed hands a number of times before Beach Club Development, Inc., built Beach Club Towers and, as sublessor, subleased a "condominium parcel" to each of Beach Club Towers' ninety-two unit owners. Each condominium parcel included a leasehold interest in the condominium unit itself, and an undivided leasehold interest in the underlying land.

In 2011, the County stopped distinguishing between land and improvements, and began treating the condominium structures of Beach Club Towers and the underlying land the same for purposes of taxation; that is, it began assessing ad valorem property taxes on both. The County based its policy shift on this Court's opinion in *Accardo v. Brown*, 63 So. 3d 798 (Fla. 1st DCA 2011), which was approved in *Accardo v. Brown*, 139 So. 3d 848 (Fla. 2014). In *Accardo*, as in this case, a group of condominium owners on Santa Rosa Island contended that the land underlying their condominiums was not subject to ad valorem property taxation

So. 2d 689 (Fla. 1974); *Williams v. Jones*, 326 So. 2d 425 (Fla. 1975); *Am Fi Inv. Corp. v. Kinney*, 360 So. 2d 415 (Fla. 1978); *Bell v. Bryan*, 505 So. 2d 690 (Fla. 1st DCA 1987); *Ward v. Brown*, 919 So. 2d 462 (Fla. 1st DCA 2005).

3

because Escambia County owned the land. *Id.* at 849. Relying on the doctrine of equitable ownership, the supreme court held that, because their leases in the land were "perpetually renewable," the condominium owners owned equitable title to the land and were liable to pay ad valorem property taxes. *Id.* at 856.

In light of *Accardo*, the County began assessing ad valorem property taxes on the land underlying Beach Club Towers. In response, the Association filed a complaint seeking, among other things, a declaratory judgment that the land underlying Beach Club Towers is government-owned and not subject to ad valorem taxation, and injunctive relief enjoining the County from treating it differently. The Association alleged that, unlike the lessees in *Accardo*, its unit owners did not have perpetually-renewable leases. The Association also alleged that the County could not subject the condominium structures to ad valorem property taxation, but concedes on appeal that the structures are taxable. The Association and the County filed cross-motions for summary judgment. The trial court granted summary judgment in favor of the County.

## II.

The outcome of this case turns on who owns the land underlying Beach Club Towers. If Escambia County owns it, then it is exempt from ad valorem taxation under section 196.199(1), Florida Statutes. In that event, the unit owners would merely be lessees of the land, and the County could tax the unit owners' leasehold

4

interests only as intangible personal property. § 196.199(2)(b), Fla. Stat. If the unit owners own the land, then it is subject to ad valorem property taxes, payable by the unit owners.

A person may be deemed the owner of property for taxation purposes even without legal title, based on the doctrine of equitable ownership. *See Accardo*, 139 So. 3d at 856 ("Our case law regarding the application of the equitable ownership doctrine makes clear that the person or entity holding equitable title to real property will be deemed the owner of the property for ad valorem tax purposes."). "The lessee is deemed to be the leased property's equitable owner if the lessee holds 'virtually all the benefits and burdens of ownership' of the leased property." *Robbins v. Mt. Sinai Med. Ctr., Inc.,* 748 So. 2d 349, 351 (Fla. 3d DCA 1999) (quoting *Leon Cty. Educ. Facilities Auth. v. Hartsfield,* 698 So. 2d 526, 530 (Fla. 1997)).

The County interpreted *Accardo* broadly to expand the doctrine of equitable ownership with regard to the property on Santa Rosa Island, taking the position that lessees equitably own property even under those leases that are not perpetually renewable. Like the Third District recently held, we conclude this interpretation of *Accardo* "overreached." *Garcia v. Dadeland Station Assocs. Ltd.*, 218 So. 3d 474, 475 (Fla. 3d DCA 2017).

In *1108 Ariola, LLC v. Jones*, 139 So. 3d 857 (Fla. 2014), decided the same day as *Accardo*, the supreme court emphasized that its holding in *Accardo* was based

5

on the fact that the leases were automatically renewable, stating, "[o]ur holding in *Accardo* that the taxpayers in that case are the equitable owners of both the improvements and the underlying land, turns on the fact that the leases are perpetually renewable."[2] *Id.* at 859. The subleases involved in this case are not perpetually renewable. Rather, each unit owner's sublease flows from a ninety-nine year master lease with an option to renew "for an additional ninety-nine (99) years, terms and conditions to be renegotiated at such time." Because renewal of each sublease is not automatic, but instead must be renegotiated, *Accardo* is inapplicable. The unit owners' subleases do not bear the primary hallmarks of equitable ownership described in *Accardo*, namely, the right to perpetually renew the lease, to purchase the underlying land for nominal consideration at the end of their sublease, or to otherwise exercise perpetual dominion over the property.[3] *See Island Resorts Invs., Inc. v. Jones*, 189 So. 3d 917 (Fla. 1st DCA 2016).

The dissent points out that in *Island Resorts*, where this Court decided that a

---

[2] The supreme court held in *1108 Ariola* that lessees may have equitable ownership of *improvements* on the leased property even if the leases are not perpetually renewable. Because the lessees there did not present any evidence regarding the useful life of the improvements, the County was justified in treating the lessees as the equitable owners of the improvements, regardless of whether the leases were perpetually renewable. *1108 Ariola, LLC v. Jones*, 139 So. 3d 857, 859-60 (Fla. 2014).

[3] We do not analyze other factors generally relevant to equitable ownership because, as the dissent acknowledges, the parties properly agreed that the terms of the master lease are substantively the same as the lease involved in *Island Resorts*. *See Island Resorts Invs., Inc. v. Jones*, 189 So. 3d 917 (Fla. 1st DCA 2016).

lessee was not the equitable owner of land on Santa Rosa Island, the land at issue did not contain improvements. Because the land at issue here is improved, the dissent concludes that *Island Resorts* is distinguishable. We disagree. The fact that the land at issue in *Island Resorts* was unimproved was not why the lessee was not the equitable owner. The reason the Court in *Island Resorts* noted that the land was undeveloped was to show that *1108 Ariola* did not apply. Again, *1108 Ariola* holds that a lessee was the equitable owner of improvements made to real property—despite having no right to perpetually renew the lease—because the lessee presented no evidence that the probable useful life of the improvements would survive the initial lease term. *See 1108 Ariola*, 139 So. 3d at 860. Of course, the rationale employed in *1108 Ariola* is inapplicable to land because, unlike buildings, land does not generally have a probable useful life. The issue presented does not turn on whether the land is improved.

### III.

The County also makes two related but different arguments under chapter 718, Florida Statutes, the Condominium Act. First, the County argues that chapter 718 compels the conclusion that the unit owners own the underlying land because each unit owner owns a "condominium parcel" and "condominium parcel" is a parcel of real estate that necessarily includes a proportionate ownership interest in the

7

underlying land.[4] Second, the County argues that all of each unit owner's condominium parcel—the unit and proportionate interest in the underlying land—must be subject to ad valorem taxation as real estate because section 718.120(1) mandates "that the land interest is **not to be assessed separately** by the Property Appraiser." We conclude that both arguments are without merit.

Under chapter 718, "condominium parcel" is the name given to property that each condominium buyer acquires upon purchasing a condominium, and encompasses all rights associated with condominium ownership. It is a separate parcel of real property defined as "a unit, together with the undivided share in the common elements appurtenant to the unit." § 718.103(12), Fla. Stat. The common elements of a condominium parcel include only what is subjected to condominium ownership. The "common elements" of a condominium parcel are defined as "the portions of the condominium property not included in the units," and "condominium

---

[4] The County states in its brief that, "[b]y statute, the condominium parcel that must be assessed includes a proportionate interest in the common elements, including the underlying land, **whether such land is leased or owned**." While true as far as it goes, this statement does not specify the *type* of land interest the County maintains each condominium parcel includes. Even a lessee is regarded as having an interest in land. *Williams*, 326 So. 2d at 433 ("[I]t is well established that a valid lease for a term of years is a conveyance of an interest in land."). Because this case hinges on who owns the land, it seems the County is arguing that a condominium parcel necessarily includes a proportionate *ownership* interest in the underlying land, as opposed to a possessory, leasehold interest. We have not found the "multiple legal authorities" that support this proposition, and conclude that it is irrelevant to the ultimate issue in any event.

property" is defined as "the lands, leaseholds, and personal property *that are subjected to condominium ownership*, whether or not contiguous, and all improvements thereon and all easements and rights appurtenant thereto intended for use in connection with the condominium." § 718.103(8), (13), Fla. Stat. (emphasis added). As such, if the land underlying a condominium is not subjected to condominium ownership, it is, by definition, not part of the condominium parcel.

Section 718.104, Florida Statutes, describes the process by which a condominium is created and how property is submitted to condominium ownership. In short, a condominium is created by executing a declaration of condominium complying with the requirements of chapter 718. Property is submitted to condominium ownership by including in the declaration a description of the property to be submitted and a statement submitting the property to condominium ownership. § 718.104(4)(a), (c), Fla. Stat. It is not necessary that the land underlying a condominium be submitted to condominium ownership; a leasehold estate in the underlying land may be submitted instead. § 718.104(1), Fla. Stat. ("A condominium may be created on land owned in fee simple or held under a lease complying with the provisions of s. 718.401.").

Here, the declaration of condominium states that a leasehold estate in the underlying land was submitted to condominium ownership, not Escambia County's fee simple estate. Indeed, Escambia County's deed to the land restricted it from

9

conveying its fee simple estate. Therefore, each unit owner's condominium parcel includes an undivided interest in a leasehold estate in the underlying land, which is exempted from ad valorem property taxation pursuant to section 196.199(1), Florida Statutes. We reject the County's contention that a condominium parcel must, by definition, include a proportionate ownership interest in the land underlying the condominium. The common elements of a condominium parcel include only the land, leaseholds, and personal property subjected to condominium ownership. If a fee simple estate in land is subjected to condominium ownership, then the unit owners acquire a proportionate ownership interest in the land. If a leasehold estate in land is subjected to condominium ownership, then the unit owners acquire a proportionate possessory interest in the land. The latter occurred here.

We also reject the County's second argument under chapter 718. Counties have the authority to tax improvements upon real property separate from the land itself. *See Broward Cty. v. Eller Drive Ltd. P'ship*, 939 So. 2d 130, 132 (Fla. 4th DCA 2006). Indeed, as noted above, the County for a number of years did just that, treating condominium structures as subject to ad valorem property taxation and the land underlying those same structures as subject only to taxation as intangible personal property. Nevertheless, the County now argues that chapter 718 prohibits such taxation in this case. In support of its position, the County points to section 718.120(1), which provides in pertinent part as follows:

> Ad valorem taxes, benefit taxes, and special assessments by taxing authorities shall be assessed against the condominium parcels and not upon the condominium property as a whole. . . . Each condominium parcel shall be separately assessed for ad valorem taxes and special assessments as a single parcel.

However, chapter 718 does not change whether the Property Appraiser treats portions of property as being exempt. The definitional section of chapter 192, which governs taxation and finance, provides that ad valorem tax "means a tax based upon the assessed value of property." § 192.001(1), Fla. Stat. The assessed value of property means an annual determination of the just or fair market value. § 192.001(2), Fla. Stat. The Property Appraiser is charged with "determining the value of all property within the county . . . and with determining the tax on taxable property after taxes have been levied." § 192.001(3), Fla. Stat. The statute provides that "taxable value" means "the assessed value of property minus the amount of any applicable exemption provided under s. 3 or s. 6, Art. VII of the State Constitution and chapter 196." § 192.001(16), Fla. Stat. We cannot conclude that section 718.120(1) eliminates any exemption that should otherwise be subtracted from the assessed value to reach the taxable value. Section 718.120(1) merely means that the County must assess each condominium parcel separately from other condominium parcels. *See Calypso Developers I, LLC v. Pelican Props. of S. Walton, LLC*, 109 So. 3d 1214, 1217 (Fla. 1st DCA 2013).

IV.

11

Because the unit owners are not equitable owners of the underlying land, they are exempt from ad valorem property taxation. Accordingly, we REVERSE the trial court's Final Judgment and REMAND for further proceedings consistent with this opinion.

REVERSED and REMANDED.

OSTERHAUS, J., CONCURS. BOYER, TYRIE, ASSOCIATE JUDGE, DISSENTS WITH OPINION.

BOYER, TYRIE, Associate Judge, dissenting.

I respectfully dissent. I would find that the trial court correctly applied the doctrine of equitable ownership to find that Appellant's leasehold interests in properties on Santa Rosa Island are subject to ad valorem taxation as real property. That conclusion is compelled by the Florida Supreme Court's decisions in Accardo v. Brown, 139 So. 3d 848 (Fla. 2014) and 1108 Ariola, LLC v. Jones, 139 So. 3d 857 (Fla. 2014).

In Accardo, the Supreme Court held that lessees of property leased from Santa Rosa County under perpetually-renewable leases were the equitable owners of both land and improvements, so that both were subject to ad valorem taxation. Accardo, 139 So. 3d at 855-56 (approving Ward v. Brown, 919 So. 2d 462, 463 (Fla. 1st DCA 2005)). In Ward, this Court, after noting the perpetually-renewable nature of the leases at issue, supported its conclusion that the lessees were equitable owners by noting that they

> have the right to use or rent the improvements, encumber their interests, transfer their property rights, and realize any appreciation in value from sale or rental income. They must insure and maintain the improvements and are responsible for the payment of any taxes. Therefore, appellants are equitable owners of the property.

Ward, 919 So. 2d at 463 (footnote omitted).

As the majority notes, Appellant argued below that, "unlike the lessees in Accardo, its unit owners did not have perpetually-renewable leases." (Majority

13

Op. at 4.) However, perpetual renewability of a lease is not the only hallmark of equitable ownership. In 1108 Ariola, the Supreme Court held that equitable ownership does not depend on a right to acquire title for nominal consideration nor on a lease's being perpetually renewable. 1108 Ariola, 139 So. 3d 857, 859 (Fla. 2014). Instead, the court focused on whether the lessees held "'virtually all the benefits and burdens of ownership' of the improvements at issue." Id. at 860 (quoting Leon Cnty. Educ. Facilities Auth. v. Hartsfield, 698 So. 2d 526, 530 (Fla. 1997)).

> Valid "burdens and benefits" considered by Florida courts include the lessee's obligation to insure, maintain and pay taxes on the leased property, as well as the lessee's option to purchase the leased property at the end of the lease term. None of these factors, including an option to purchase, convey to a lessee equitable title to leased property when considered individually. However, when these factors are considered in relation to one another, the courts may determine that a lessee is the equitable owner of leased property.

Robbins v. Mt Sinai Med. Ctr., Inc., 748 So. 2d 349, 351 (Fla. 3d DCA 1999)(internal citations omitted). The proper analysis, then, does not focus on individual factors, but considers all factors in relation to one another. At oral argument, the parties agreed that the leases at issue in this case are substantially identical to those at issue in Island Resorts Investments, Inc. v. Jones, 189 So. 3d

14

917 (Fla. 1st DCA 2016).[5] Those lease terms were summarized in Island Resorts as follows:

> [the leaseholder] must pay lease fees; maintain liability, flood, windstorm, fire, and casualty insurance; pay all future ad valorem real property taxes, if any, and all other future taxes and assessments imposed on the subleased property; repair or rebuild any building or improvement in the event of damage or destruction; and pay for all its utilities. Appellant shall also have the right to assign, sublease, or otherwise convey or to mortgage all or portions of the subleased property. Title to any buildings or improvements on the leased property vests in Escambia County, and Appellant is required to deliver and surrender possession of the subleased property upon the expiration or termination of the lease.

Island Resorts, 189 So. 3d at 918.

As in Accardo, 1108 Ariola, and Ward, the leases in this case are not perpetually renewable. However, in this case, the leases are renewable once the terms are re-negotiated. It is difficult to imagine why the unit owners would not want to re-negotiate the terms of the leases for another 99 years, since the unit owners have ownership interests in their condominiums. Perhaps the most plausible impediment to renewal of the leases, from Escambia County's perspective, would be if the county were unable to collect ad valorem taxes from these unit owners.

Appellant conceded in the trial court its ownership of, and liability for ad valorem taxes on, the improvements made to the properties at issue. That

---

[5] While the lease terms are substantially identical, Island Resorts differs from the instant case in that the real property in Island Resorts was unimproved.

15

concession, however, does not render irrelevant those indicia of ownership—the burdens and benefits—which apply only to the improvements. The proper analysis remains the same—consideration of all factors in relation to one another. The indicia of ownership in the leases at issue here are similar to those present in Ward: "Appellants have the right to use or rent the improvements, encumber their interests, transfer their property rights, and realize any appreciation in value from sale or rental income. They must insure and maintain the improvements and are responsible for the payment of any taxes." Ward, 919 So. 2d at 463. And while, as noted, these leases are not perpetually renewable, they bear a more compelling similarity to those in Ward: their initial term of 99 years makes them eligible for homestead exemption under Article VII, section 6(a) of the Florida Constitution, which this Court in Ward characterized as an "express[] contemplat[ion]" of equitable ownership. Id. at 465.[6]

The Appellant's reliance on Island Resorts is misplaced and that case is distinguishable because the property at issue in Island Resorts was unimproved. Island Resorts, 189 So. 3d at 922 ("Neither does this case involve the taxation of improvements."). Therefore, terms of the lease applicable to

---

[6] The Constitutional provision of homestead exemption and, therefore, equitable ownership, for leaseholds initially in excess of 98 years negates any reliance on Garcia v. Dadeland Station Associates, Ltd., 218 So. 3d 474 (Fla. 3d DCA 2017). Garcia does not analyze benefits and burdens of ownership, but the court there concluded that a lease without perpetual renewability or a nominal purchase option, and an initial term of 90 years, was not equitable ownership.

16

improvements, since none existed, did not enter into the analysis. In <u>Ward</u>, this Court stated that the Florida Constitution "expressly contemplates equitable ownership for leases with initial terms of 99 years . . . ." <u>Ward</u>, 919 So. 2d at 464. Consistent with <u>Accardo</u>, <u>1108 Ariola</u>, and <u>Ward</u>, I would affirm the judgment under review.